WILLIAM DE LORENZO, PLAINTIFF-APPELLANT, v. CITY OF HACKENSACK, A MUNICIPAL CORPORATION OF NEW JERSEY, AND PARKING AUTHORITY OF THE CITY OF HACKENSACK, A BODY CORPORATE AND POLITIC, DEFENDANTS-RESPONDENTS.

Reargued March 31, 1952—Decided May 12, 1952.

Mr. *William De Lorenzo* argued the cause for the plaintiff-appellant.

Mr. *Ralph W. Chandless* argued the cause for the defendants-respondents City of Hackensack and Parking Authority of the City of Hackensack (*Messrs. Chandless, Weller, Kramer & Frank,* attorneys).

*Mr. Benjamin C. Van Tine* argued the cause for the State of New Jersey (*Mr. Theodore D. Parsons,* Attorney-General of the State of New Jersey, attorney).

*Mr. Martin J. Loftus* argued the cause and filed brief *amicus curiae* for Isaac Terhune and Louise Terhune.

*Mr. Ernest Weller* filed brief *amicus curiae* for Emil J. Habrich (*Messrs. Reed, Hoyt & Washburn,* attorneys).

*Mr. William N. Gurtman* filed brief *amicus curiae* for Parking Authority of the City of Passaic (*Messrs. Gurtman & Schomer,* attorneys).

The opinion of the court was delivered by

JACOBS, J. This court granted certification under *Rule* 1:5–3 to review a judgment of the Law Division which sustained the power of the Parking Authority of the City of Hackensack to issue bonds as a body corporate and politic validly created under *L.* 1948, *c.* 198 (*R. S.* 40:11A–1 *et seq.*) and declared the legality of certain agreements entered into between the authority and the city of Hackensack.

Following the passage of *L.* 1948, *c.* 198, the City of Hackensack, by ordinance, created its parking authority. Thereafter studies were made, the construction of several off-street parking projects was planned, and the authority entered into negotiations for the sale of its bonds in the principal amount of $650,000. It was evident that if the authority's bonds could pledge the city's credit as well as its own they would be more readily saleable at lower interest rates. Accordingly, the city and the authority entered into three agreements dated respectively January 24, 1951, April 1, 1951, and June 4, 1951.

In the main these agreements provided that the authority would acquire certain designated parcels of land and construct parking facilities thereon; the city would lease the land and facilities for 30 years and would agree to pay fixed

annual rentals; possession and operation of the land and facilities would remain in the authority which would reduce each annual rental payment from the net revenue realized by it during the preceding year from such operation; the authority could mortgage the premises, issue its bonds and assign the rental payments due from the city to a trustee for bondholders, as additional security, and in such event the city's obligation to make its rental payments would remain absolute and unconditional even though the authority did not undertake or complete the construction of the parking facilities or otherwise defaulted.

Although the agreements purported to effectuate leasing arrangements it seems clear that none of the ordinary incidents of leases was present. Looking through their form to their substance, the agreements obligated the city to contribute annually during each of the 30 years the difference between the net revenues of the authority in the previous year and the amount required by the authority for payment of principal and interest on its bonds. That much is expressly conceded in the brief *amicus curiae* filed in this court at the request of the attorneys for the city and the authority in the name of the chairman of the authority. No ordinance relating to the agreements was ever adopted by the city and the only appropriation made pursuant thereto was in the city's budget for 1951 in an amount representing the 1951 rental payable under the agreements.

In July, 1951, the plaintiff-appellant William De Lorenzo, a taxpayer residing in Hackensack, filed his complaint in the Law Division seeking a declaration as to the validity of the agreements between the city and the authority. The city filed answer and the authority filed answer, counterclaim and cross-claim seeking a declaration that the agreements were valid and enforceable and that a proposed assignment, as security, by the authority to a trustee for bondholders of the annual rental payments from the city would be valid and enforceable. Thereafter motions for judgment on the pleadings were made by the taxpayer and the authority. In its opinion

sustaining the agreements and the authority's right to assign the annual rental payments to a trustee for bondholders, the Law Division indicated its view that *L*. 1948, *c*. 198 was a constitutional exercise of legislative power (*McSorley v. Fitzgerald*, 359 *Pa*. 264, 59 *A*. *2d* 142 (*Sup*. *Ct*. 1948)), that the city had power to enter into its agreements with the authority (*R. S*. 40:11*A*–21; *R. S*. 40:11*A*–23; *R. S*. 40:56–1.1 *et seq.*), and that no appropriation beyond the rental payment for the then current year of 1951 or further ordinance was necessary (*Debow v. Lakewood Township*, 131 *N. J. L*. 291 (*Sup*. *Ct*. 1944); *Viracola v. Long Beach*, 1 *N. J. Misc*. 200 (*Sup*. *Ct*. 1923)). The ensuing judgment dismissing the taxpayer's complaint and granting the relief sought by the authority is now before us for review and the cause has been reargued at the court's direction.

 The parking problem confronting urban municipalities in New Jersey and elsewhere is a serious one. See *Giant Tiger Corporation v. Board of Commissioners of Trenton*, 11 *N. J. Misc*. 836, 839 (*Sup*. *Ct*. 1933); *England v. Millburn Township*, 122 *N. J. L*. 462, 465 (*E. & A*. 1939). It is being dealt with in many communities by public off-street parking facilities operated oftentimes by the municipalities themselves or by so-called parking authorities created pursuant to enabling legislation. Dean Fordham has referred to the State of Pennsylvania as the leading exponent of the authority plan (*Fordham, Local Government's Power to Provide and Finance Parking Facilities*, 5 *Traffic Quarterly* 369, 370 (1951)) and a discussion of the enabling statute in that state may be found in *Alpern, Unsnarling the Traffic Jam by the Use of Parking Authorities*, 36 *Va. L. Rev*. 1029 (1950). In *McSorley v. Fitzgerald, supra*, the Supreme Court of Pennsylvania in sustaining its Parking Authority Law had little difficulty in accepting the legislative finding that the maintenance of off-street parking facilities, designed to relieve traffic congestion, constitutes a proper public purpose. Indeed, all of the pertinent recent decisions soundly embody similar views. *Fordham, supra*, at *p*. 372; 8 *A. L. R*.

2d 373, 376 (1949). See *Denihan Enterprises, Inc., v. O'Dwyer*, 302 *N. Y.* 451, 99 *N. E.* 2d 235 (*Ct. App.* 1951); *Poole v. City of Kankakee*, 406 *Ill.* 521, 94 *N. E.* 2d 416 (*Sup. Ct.* 1950); *State v. Rhodes*, 156 *Ohio St.* 81, 100 *N. E.* 2d 225 (*Sup. Ct.* 1951).

 The use of independent authorities to effectuate proper public purpose was well known in early English and American history; in part, it was a device to enable public road construction as self-liquidating projects without additional burdens on taxpayers. See *Alpern, supra*, at *p.* 1030. In our State their legal validity has been repeatedly recognized. Thus in *New Jersey Turnpike Authority v. Parsons*, 3 *N. J.* 235 (1949), this court sustained the act which created the New Jersey Turnpike Authority empowered to construct turnpike projects and issue its revenue bonds to defray the cost thereof. *Cf. City of Camden v. South Jersey Port Commission*, 4 *N. J.* 357 (1950). And in *Romano v. Housing Authority, Newark*, 123 *N. J. L.* 428 (*Sup. Ct.* 1939), affirmed 124 *N. J. L.* 452 (*E. & A.* 1940) the Court of Errors and Appeals sustained the act which authorized municipalities to create housing authorities with power to construct and operate housing projects and issue bonds. See also *Ryan v. Housing Authority of Newark*, 125 *N. J. L.* 336 (*Sup. Ct.* 1940); *Kantor v. Perth Amboy*, 123 *N. J. L.* 504 (*Sup. Ct.* 1939).

 In the light of the foregoing it seems clear to us that *L.* 1948, *c.* 198, insofar as it authorized, in *section* 4, the creation of a parking authority in Hackensack with power under *section* 8 to issue its bonds constituted a proper exercise of the legislative function. See *Allison v. Corker*, 67 *N. J. L.* 596, 603 (*E. & A.* 1902). Indeed, as we understand the briefs of counsel, they do not question the basic right of the Legislature to enable the creation of municipal parking authorities with authority to issue bonds but rather address their attack to particular individual powers granted elsewhere in *L.* 1948, *c.* 198, which they assert are not accompanied by sufficient legislative standards or are otherwise

invalid. Thus, they point to the broad powers enumerated in *section* 6 (*R. S.* 40:11A–6) which they contend are without proper legislative guide for their exercise. See *Van Riper v. Traffic Telephone Workers Federation,* 2 *N. J.* 335, 353 (1949). But *cf. Bd. of Health of Weehawken v. N. Y. Central R. Co.,* 4 *N. J.* 293, 300 (1950) ; *Davis, Administrative Law, p.* 52 (1951) ; 2 *McQuillin, Municipal Corporations* (*3d ed.* 1949), *p.* 22. However, since we are of the opinion that the only real controversy between the parties in the instant matter will be fully disposed of by our adjudication on the validity of the agreements between the City of Hackensack and the parking authority, we shall refrain from consideration of the legislative standard issue and the other issues touched upon in the briefs of counsel; they ought to await determination in appropriate controversies where they may be grounded upon particular facts fully and properly presented to the court. See *Rescue Army v. Municipal Court of the City of Los Angeles,* 331 *U. S.* 549, 568, 67 *S. Ct.* 1409, 91 *L. Ed.* 1666, 1677 (1947) ; *Denihan Enterprises, Inc., v. O'Dwyer, supra; Como Farms, Inc., v. Foran,* 6 *N. J. Super.* 306, 317 (*App. Div.* 1950). *Cf. Heckel, Constitutional Law,* 6 *Rutgers L. Rev.* 27 (1951).

█ We come now to consideration of the agreements between the City of Hackensack and the parking authority which, in substance, contemplated that the city would be obligated to make contributions to meet the principal and interest on the authority's bonds where its own revenues were insufficient. The city and the authority contend that *L.* 1948, *c.* 198, contains adequate provision authorizing such contributions and refer particularly to *section* 21 which provides that any city "shall have the power from time to time to grant, appropriate, donate, contribute, or lend money to such authority or to agree to take such action," and *section* 8 which provides that the authority's bonds "may be additionally secured by a pledge of any grant or contributions from the Federal Government, State or county, or municipality." On the other hand the contention is advanced that under the

agreements the city has, in effect, pledged its credit to secure payment of the bonds in violation of *section* 9 which provides that the bonds of the authority "shall not be a debt of the State or any political subdivision thereof and neither the State nor any political subdivision thereof shall be liable thereon, nor in any event shall such bonds or obligations be payable out of any funds or properties other than those of said authority." Our judicial function is to interpret and reconcile the quoted phraseology in the light of the legislative purpose. See *Central R. R. Co. of N. J. v. Division of Tax Appeals,* 8 *N. J.* 15, 20, 27 (1951).

In *L.* 1942, *c.* 138, the Legislature authorized municipalities to acquire and operate parking facilities and defray the cost thereof by general taxation. *R. S.* 40:60–25.1 *et seq.* In *L.* 1949, *c.* 261, the Legislature authorized municipalities to undertake, as local improvements, the work of providing parking facilities. *R. S.* 40:56–1.1 *et seq.* Under these enactments taxpayers generally or those specially benefitted would bear the financial burden, and the City of Hackensack chose not to proceed thereunder. In *L.* 1948, *c.* 198. the Legislature sought to afford to municipalities the means of providing public off-street parking facilities through independent authorities which would be substantially self-liquidating, thus restricting or eliminating the financial burdens on their taxpayers. It recognized, as had the Pennsylvania Legislature before it, that even though the authorities would be substantially self-liquidating they might require incidental aid from municipalities or other state and federal agencies. Thus, the Pennsylvania statute provides for loans (*Alpern, supra,* at *p.* 1035), and our statute provides for loans and grants from time to time (*R. S.* 40:11A–21) and other aids. *R. S.* 40:11A–23. It may here be noted that the title to *L.* 1948, *c.* 198, states that it is an act to provide for the creation of bodies corporate and politic "parking authorities" with power, among others, to issue bonds and provide for their payment, with further power to accept grants from the Federal Government, the State and political subdivisions of the State, and

"authorizing counties and municipalities to grant financial and other aid to parking projects."

Nowhere in *L.* 1948, *c.* 198, or in comparable legislation elsewhere is there any suggestion that the municipality's grant or aid may extend to a municipal guarantee of the parking authority's bonds. See *Pershing, Revenue Bond Financing of Public Off-Street Parking Facilities,* 36 *Va. L. Rev.* 1019 (1950), where the author discusses financing difficulties encountered by public parking projects in our neighboring states and suggests methods of facilitating the sales of their revenue bonds. Municipal guarantees would, of course, generally eliminate the difficulties but they are not mentioned by the author, presumably because they have not been authorized by the applicable legislation and their use would largely pervert the self-liquidating nature of the projects. In *section* 9 of *L.* 1948, *c.* 198 (*R. S.* 40:1A–9) we find what we consider to be a legislative mandate against a municipal guarantee of the authority's bonds; it provides that the authority's bonds shall not be a debt of the State or any political subdivision thereof and that neither the State "nor any political subdivision thereof shall be liable thereon." Any attempt to evade this legislative mandate and the public policy it embodies, such as that portrayed by the agreements between the city and the authority, ought and will be struck down by the courts. *Cf. Houston Petroleum Co. v. Automotive Products Credit Association,* 9 *N. J.* 122, 130 (1952) ; *Stockton v. Central R. R. Co.,* 50 *N. J. Eq.* 52, 76 (*Ch.* 1892)

The respondents place their main reliance upon *section* 21 (*R. S.* 40:11A–21) which provides that the municipality may "from time to time" make loans or grants "or * * * agree to take such action." That section must be read in the light of the underlying statutory purpose and the other pertinent sections of the act, particularly *section 9. Central R. R. Co. of N. J. v. Division of Tax Appeals, supra.* Thus read, it may be said to express the legislative contemplation that the municipality may properly lend or grant money or agree to take such action from funds currently

appropriated or otherwise actually available for distribution; and under *section* 8 grants thus made within *section* 21 may be pledged by the authority as additional security on its bonds. This interpretation enables fair attainment of the legislative purpose that the parking project be financed through revenue bonds of the authority with such incidental aid as the municipality may be in a position properly to furnish from time to time. On the other hand, the broader interpretation advanced by the respondents would enable the municipality to guarantee at the inception payment of the authority's entire bond issue, thus largely nullifying *section* 9 and frustrating the primary legislative purpose that, unlike the situation where the parking facility is operated by the municipality itself (*L.* 1942, *c.* 138), local taxpayers are not to be obligated directly or indirectly on the independent parking authority's revenue bonds. Under settled principles of statutory construction an interpretation involving these consequences should readily be rejected. See *Hackensack Water Co. v. Ruta,* 3 *N. J.* 139, 147 (1949).

We have concluded that, under the guise of the lease agreements dated January 24, 1951, April 1, 1951, and June 4, 1951, coupled with the proposed assignment to the trustee for bondholders, the city and the authority have sought to effectuate a municipal guarantee of the authority's bond issue in violation of the legislative policy expressed in *section* 9 (*R. S.* 40:11*A*–9) and that, consequently, the agreements must be declared invalid and set aside. Accordingly, the judgment entered in the Law Division is

Reversed.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For affirmance*—None.