162 N.J. Super. 552 (1978)
394 A.2d 103
FRANK S. GRAZIANO AND ELAINE M. GRAZIANO, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
MAYOR AND TOWNSHIP COMMITTEE OF THE TOWNSHIP OF MONTVILLE AND MONTVILLE TOWNSHIP MUNICIPAL UTILITIES AUTHORITY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 27, 1978.
Decided September 13, 1978.
*555 Before Judges FRITZ, BOTTER and ARD.
Mr. Stanley W. Sokolowski argued the cause for appellants.
Mr. Edward J. Buzak argued the cause for respondent Montville Township Municipal Utilities Authority (Messrs. Villoresi and Buzak, attorneys).
Mr. Lawrence K. Eismeier argued the cause for respondent Montville Township (Messrs. Eismeier & Falcon, attorneys).
The opinion of the court was delivered by BOTTER, J.A.D.
This is an appeal from a judgment entered at the close of trial dismissing plaintiffs' action in lieu of prerogative writs. Plaintiffs challenge the legality of a "service contract" entered into by respondents Montville Township and the Montville Township Municipal Utilities Authority (MUA). Plaintiffs' principal contention is that annual payments made by the township to the MUA to offset operating deficits are illegal because they are made pursuant to the terms of the contract and bond resolutions which violate a statutory prohibition against a municipality incurring any debt or liability for bonds issued by a municipal utilities authority.
The issues in this case are issues of law, not fact. The material facts were stipulated below or were otherwise not in real dispute. See Evid. R. 3. Plaintiffs are taxpayers in Montville Township and have standing to bring this action challenging the contract and payments made out of general municipal revenues in connection with the contract. *556 Camden Plaza Parking, Inc. v. Camden, 16 N.J. 150, 158-159 (1954); Waszen v. Atlantic City, 1 N.J. 272, 276 (1949).
The MUA was created by ordinance of Montville Township in August 1964 pursuant to the Municipal Utilities Authorities Law (the Act), N.J.S.A. 40:14B-1 et seq. On October 1, 1967 respondents entered into a contract whereby the MUA agreed to construct, acquire and operate specified parts of a water and sanitary sewer system in Morris County. The estimated cost of the project was approximately $5,000,000, to be raised through bond issues and grants in aid from governmental entities. Thereafter, pursuant to a bond resolution of April 1971, the first permanent bonds were issued by the MUA. (We are told that short-term loans financed the construction of the project.) Another permanent bond issue of $2,000,000 was authorized by resolution adopted by the MUA on April 27, 1976, notice of which was first published in a newspaper on May 6, 1976 as required by N.J.S.A. 40:14B-28.
This action was filed on August 25, 1976, inspired, no doubt, by the new bond issue and MUA's increasing annual deficits paid by the township out of general revenues raised by local property taxes according to the value of real property and not according to the use made by property owners of MUA's services. Starting in 1971 with a deficit of $100,000, MUA's annual deficit has risen to $265,000 in 1976. Township payments to MUA totalled $932,000 for the six consecutive years inclusive of 1976.
The issues in this case pertain primarily to the provisions of sections 301 and 302 of the contract. Section 301 provides that service charges imposed upon users of the system will pay for expenses of operation and maintenance of the system, debt service on MUA bonds, and necessary reserves; provided, however, that with the township's written consent the MUA may impose service charges, "which shall be less than sufficient to comply with the foregoing requirement * * *." Section 302 provides that the township will pay *557 the MUA the deficit that results from not charging users of the system the full operating costs and bond requirements. The annual payments due from the township are termed "Annual Charges."
Other provisions in the contract are relevant to sections 301 and 302. Section 303 provides that service charges fixed and charged by the MUA require the township's written consent or approval. Section 413 provides that the MUA shall repay the township all moneys paid by the township under the contract except service charges on property owned by the township itself. This section, therefore, transforms the annual charges provided in section 302 into loans by the township to the MUA which are to be repaid without interest out of MUA's surplus revenues that may accrue at a future time. Section 410 authorizes the MUA to pledge the annual charges receivable from the Township as security for MUA's obligation to its bondholders.
We deal with the main substantive issue which the trial judge decided in defendants' favor, although he also held that the action was barred by the 20-day period of limitations prescribed by N.J.S.A. 40:14B-28. Appellants contend that the contract and bond resolutions created municipal debt as a charge upon the general taxing power of the municipality, in violation of N.J.S.A. 40:14B-33, citing, by analogy, DeLorenzo v. Hackensack, 9 N.J. 379 (1952). DeLorenzo held that a municipal obligation "to make contributions to meet the principal and interest on the [parking] authority's bonds where [the authority's] own revenues were insufficient" violated N.J.S.A. 40:11A-9 as it existed when DeLorenzo was decided. Id. at 386. N.J.S.A. 40:11A-9 declared that the authority's bonds shall not be a debt of the State or any political subdivision thereof and that the State and any subdivision shall not be liable thereon. DeLorenzo also held that the statutory authorization to a municipality to make or agree to make loans or grants to a parking authority is limited to making discretionary loans or grants from current appropriations from time to time rather *558 than in all cases when the parking authority's revenues are deficient. 9 N.J. at 388-389.
N.J.S.A. 40:14B-33 provides in part:
* * * Bonds or other obligations issued pursuant to this act shall not be in any way a debt or liability of the State, and bonds or other obligations issued by a municipal authority pursuant to this act shall not be in any way a debt or liability of the State or of any local unit or of any county or municipality and shall not create or constitute any indebtedness, liability or obligation of the State or of any such local unit, county or municipality, either legal, moral or otherwise, and nothing in this act contained shall be construed to authorize any municipal authority to incur any indebtedness on behalf of or in any way to obligate the State or any county or municipality.
Respondents contend that these provisions merely mean that a municipal utilities authority cannot unilaterally obligate the State or any municipality or county, but that N.J.S.A. 40:14B-33 is not violated by a bilateral agreement which requires the Township to pay a contractually specified share to the MUA. Respondents refer to N.J.S.A. 40:14B-49 which appears to authorize a municipality to agree to pay a municipal utilities authority any sums agreed upon in lieu of service charges that would otherwise be imposed upon others in the municipality. N.J.S.A. 40:14B-49 provides that such agreements may be made for "a specified or an unlimited time" and are valid whether or not a prior appropriation has been made.[1]
*559 We must reconcile, if possible, the seemingly inconsistent provisions of sections 33 and 49 of the act, N.J.S.A. 40:14B-33 and N.J.S.A. 40:14B-49. Section 33 provides that the bonds issued by a municipal utilities authority pursuant to the act shall not be or create a debt, liability or obligation *560 of the State or any municipality or county. Clearly and literally, the bonds of the MUA are not and do not create a debt or obligation of the township. The last clause of section 33 also makes it clear that a municipal authority by its own unilateral action cannot impose any debt upon or in any other way obligate the State or any municipality or county.
However, we must consider the problem suggested by the holding in DeLorenzo v. Hackensack, supra. Prior to its amendment, N.J.S.A. 40:11A-9 was similar to N.J.S.A. 40:14B-33; it provided that bonds of a parking authority shall not be a debt of the State or its political subdivisions. Because of this provision, DeLorenzo invalidated a leasing agreement between the City of Hackensack and its parking authority whereby the city was obligated to pay all operating deficits for a 30-year period sufficient to pay the principal and interest of the authority's bonds. 9 N.J. at 388. The court found that the municipality's undertaking was tantamount to a guaranty of the authority's bonds. As noted above, the court held that a municipality could not make such a lease because it effectively obligated the city contrary to N.J.S.A. 40:11A-9 and tended to "pervert the self-liquidating nature of the projects." Id. The court also held that the municipality's power to make grants or loans from time to time to the parking authority pursuant to N.J.S.A. 40:11A-21, which is comparable to N.J.S.A. 40:14B-24, did not authorize a municipal guaranty of the parking authority's entire bond issue from the inception. 9 N.J. at 388-389. The Parking Authority Law was thereafter amended to permit a municipality to guarantee bonds issued by a parking authority. L. 1958, c. 22, §§ 5 and 9; N.J.S.A. 40:11A-9 and N.J.S.A. 40:11A-22(1)(e). As amended, N.J.S.A. 40:11-22(2) provides that such guaranty of the parking authority's bonds may be made despite debt limitations provided in the Local Bond Law, N.J.S.A. 40A:2-1 et seq., but that the principal amount of bonds guaranteed by the municipality shall be included in its gross debt for purposes of the Local Bond Law. See N.J.S.A. 40A:2-6. *561 which, in conjunction with N.J.S.A. 40A:2-42, establishes municipal debt limitations in proportion to the equalized valuation of taxable real property in the municipality.
Thus, N.J.S.A. 40:11A-9 and N.J.S.A. 40:11A-22, as amended, now expressly authorize municipal guarantees of a parking authority's bonds. This is similar to the situation presented by the coexistence of N.J.S.A. 40:14B-33 and N.J.S.A. 40:14B-49. Section 33 provides that MUA's bonds shall not be a municipal debt. But, in sweeping terms, § 49 of the act authorizes municipalities to help support a municipal utilities authority. Section 49 authorizes a municipality by contract to obligate itself to pay to the municipal authority "sums of money * * * in lieu of all, or any part of the service charges which would otherwise be charged * * * with regard to persons or real property within such municipality." Such contract may be made "for a specified or an unlimited time * * * and shall be valid whether or not an appropriation with respect thereto is made by the governmental unit prior to authorization or execution" of the contract. Id. Such contract may be made "on any terms and conditions" approved by the municipality so long as they do not violate the terms of the municipal utilities authority's contracts with bondholders. Id.
Thus, if service charges paid by the MUA's customers are not sufficient to cover interest and principal due on the authority's bonds, the township may ultimately be required to pay to the MUA the equivalent of the bonded indebtedness. The question is whether this potential result invalidates the contract between the municipality and the authority, as in DeLorenzo, supra, as a violation of N.J.S.A. 40:14B-33. We conclude that it does not. The municipality cannot expressly guarantee the obligations of the authority. See DeLorenzo, supra. But N.J.S.A. 40:14B-49 authorizes a municipality to enter into a contract similar to the contract involved here in which the township agreed to pay to the MUA any deficit in revenues needed to pay bond amortization *562 and operating costs. The actual obligation here may amount to less than a guarantee of the MUA's bonds.
McCutcheon v. State Building Auth., 13 N.J. 46 (1953), dealt with an analogous problem on the state level. There the statute in question authorized the creation of a State Building Authority with the right to issue bonds and construct buildings which were then to be leased to the State at rentals sufficient to pay off the bonds over a period of years. The court held that the arrangement violated the debt limitation clause of the 1947, New Jersey Constitution, Art. VIII, § II, par. 3. The court held that the scheme was an impermissible contrivance to avoid the constitutional limitations upon state debt. In dissent, Justice Jacobs, joined by Justice Brennan, argued that rent due in the future should not be regarded as a present debt or liability of the State. This dissenting view became the established law in Clayton v. Kervick, 52 N.J. 138, 150 (1968). This position was reaffirmed in Holster v. Passaic County College Bd. of Trustees, 59 N.J. 60, 71 (1971), which held that an anticipated future legislative appropriation is not a present state debt or liability because a future legislature cannot be bound to make the appropriation.
The trial judge in this case held that the municipal governing body that entered into the contract with the MUA could not bind the township's future governing bodies to make annual appropriations to fulfill the township's obligations under its contract with the MUA. The trial judge said:
* * * I adopt Holster, as I must * * * I agree with the reasoning * * *.
* * * As was correctly pointed out by Judge * * *, each year is a separate year. Each year the governing body of the municipality has a right to appropriate what it deems necessary for the services rendered through the MUA * * *.
Respondents urge the same position on this appeal.
The principle that a municipality can dishonor any contract of more than one year simply because every year requires *563 a new appropriation does not apply here. The State and municipalities are not on the same footing in this regard. Holster, supra, and the cases cited therein apply only to state agreements and appropriations. The Constitution requires the Legislature to live with its budget of anticipated revenues and expenses. Art. VIII, § II, par. 2. State debts payable by appropriations in future years can be incurred only in conformity with Art. VIII, § II, par. 3, which provides certain limitations and referendum procedures. Enforcement of State obligations by court order implicates the separation of powers doctrine memorialized in N.J. Const. 1947, Art. III, par. 1, the appropriations clause of our Constitution, mentioned above, Art. VIII, § II, par. 2, and principles of sovereign immunity. See P.T. & L. Construction Co. v. Comm'r, Dept. of Transportation, 60 N.J. 308 (1972); Gallena v. Scott, 11 N.J. 231 (1953); Amantia v. Cantwell, 89 N.J. Super. 7 (App. Div. 1965).
But the constitutional limitation on state debt, N.J. Const. (1947), Art. VIII, § II, par. 3, does not apply to debts of political subdivisions such as municipalities and counties. Van Cleve v. Passaic Valley Sewerage Comm'rs, 71 N.J.L. 183, 228 (Sup. Ct. 1904), rev'd on other grounds, 71 N.J.L. 574 (E. & A. 1905), cited with approval in Clayton v. Kervick, 52 N.J. 138, 147-148 (1968). Also, the separation of powers doctrine as it applies to federal and state governments is inapplicable to municipalities. Smith v. Hazlet Tp., 63 N.J. 523, 530 (1973); Eggers v. Kenny, 15 N.J. 107, 120 (1954). Ordinarily, municipal officers are more amenable to judicial compulsion, and, therefore, municipal obligations validly undertaken are more susceptible of enforcement. See Essex Cty. Bd. of Taxation v. Newark, 73 N.J. 69 (1977); cf. Robinson v. Cahill, 67 N.J. 35 and 67 N.J. 333 (1975) (citations to other opinions in Robinson v. Cahill are omitted).
These are, of course, general statutes that control the fiscal affairs of municipalities. Normally, municipal contracts cannot be made for more than one year because *564 provisions of the Local Budget Law, N.J.S.A. 40A:4-1 et seq. forbid expending funds and incurring obligations for which no appropriations have been made. N.J.S.A. 40A:4-57; see also N.J.S.A. 2A:135-5 and N.J.S.A. 40A:11-15. N.J.S.A. 40A:4-3 requires the governing body of a county or municipality to adopt a budget for each fiscal year on a cash basis as defined in N.J.S.A. 40A:4-2. N.J.S.A. 40A:4-22 requires that anticipated revenues must equal total appropriations. In combination, these statutes provide that appropriations for debt service, expenses of operations for the fiscal year and mandatory payments shall not exceed anticipated cash receipts for the same year. Consistent with these provisions, N.J.S.A. 40A:11-15 of the Local Public Contracts Law, N.J.S.A. 40A:11-1 et seq., limits the duration of contracts to a period of 12 consecutive months, with certain specified exceptions. For example, longer contracts may be made for: heating fuel, 2 years; collection of garbage, 5 years; recycling of solid waste, 25 years; data processing, 3 years; etc.
As stated above, N.J.S.A. 40:14B-49 provides that contracts between a municipality and a municipal utilities authority may be made for a "specified or unlimited time" on such terms as the municipality and the authority agree. As a specific statute it controls this subject to the exclusion of general provisions in Title 40A governing debt limitations and contract requirements. A specific statute prevails over a general statute on the same subject. Kingsley v. Wes Outdoor Advertising Co., 55 N.J. 336, 339 (1970).
Thus, the township's contract with the MUA does not conflict with N.J.S.A. 40:14B-33 and is not prohibited by general statutes limiting municipal debts and the duration of contracts; and the constitutional strictures on governmental debts and appropriations apply to the State Government, not to municipalities. Therefore, N.J.S.A. 40:14B-49 validly authorized the township to take on obligations to the MUA that are limited only by the good sense and fiduciary responsibility of the township's officers.
*565 That one governing body may indirectly impose growing future obligations upon municipal taxpayers by reason of an agreement to pay the MUA's deficits raises problems of a political nature  the unresponsiveness of independent administrative agencies to the will of the electorate  which are not justiciable. However, we note that the contract in question gives the township the power to approve or disapprove service charges proposed by the MUA, and the township could have restricted the deficit that it agreed to accept. Moreover, N.J.S.A. 40:14B-49 also provides that a municipal authority may impose service charges "sufficient to meet any default or deficiency in any payments agreed in such contract to be made by such municipality" regardless of the contract between the authority and municipality. The contract in question also provides for modification of service charges with consent of the township, subject to certain conditions. See also, N.J.S.A. 40:14B-23 which calls for revisions in service charges when necessary. Thus, procedures are available to control the deficit payable by the municipality. Moreover, no enlargement of the project can be made unless estimated service charges will exceed projected expenses for at least the first five years of operation of such enlargement (Contract, Section 202).
Our disposition of this substantive issue  the validity of the service contract  makes it unnecessary for us to decide the statute of limitations question although it is of general interest and should be called to the Legislature's attention. Briefly stated, that issue involves an interpretation of N.J.S.A. 40:14B-28. This section of the act bars any action which questions
* * * the validity or proper authorization of bonds provided for by the bond resolution, or the validity of any covenants, agreements or contract provided for by the bond resolution * * *
unless such action shall have been commenced within 20 days of the first publication of the notice of the adoption of the bond resolution. Appellants contend that the phrase, *566 "contract provided for by the bond resolution," excludes the October 1967 contract because it preceded the bond resolutions and was not "provided for" by them. Respondents argue, with persuasion, that a reasonable interpretion of this section of the act would bar an attack on the validity of a contract incorporated in a bond resolution by reference, especially when payment of the bonds authorized by the resolution depends upon obligations established by such contract.
Lastly, appellants advance a contention which was not made below, although appellants have not identified the contention as such, contrary to R. 2:6-2(a). Appellants contend that the township did not give its written consent as required by the contract to scheduled service charges set at a rate insufficient to cover expenses. Because this issue was not raised below we decline to pass upon it.
Appellants' other contentions, such as that the contract lacks consideration, are clearly lacking in merit. R. 2:11-3(e)(1)(E).
Affirmed.
NOTES
[1] N.J.S.A. 40:14B-49, as it existed in 1967 when the contract in question was adopted, provided:

Any municipal authority and any municipality within or without the district by ordinance of its governing body may enter into a contract or contracts providing for or relating to the treatment and disposal of sewage originating in the district or in such municipality by means of the sewerage system or any sewerage facilities of such municipality or both, and the cost and expense of such treatment and disposal. Any municipal authority and any municipality within or without the district by ordinance of its governing body may enter into a contract or contracts providing or relating to the sale or supplying of water to such municipal authority or to such municipality or to persons or properties within the district or such municipality and the cost and expense of such sale or supplying of water. Any such contract may provide for the payment to the municipal authority by such municipality annually or otherwise of such sum or sums of moneys, computed at fixed amounts or by a formula based on any factors or other matters described in section 21 or section 22 of this act or in any other manner, as said contract or contracts may provide, and may provide that the sum or sums so payable to the municipal authority shall be in lieu of all or any part of the service charges which would otherwise be charged and collected by the municipal authority with regard to persons or real property within such municipality. Any such contract may be made with or without consideration and for a specified or an unlimited time and on any terms and conditions which may be approved by such municipality and which may be agreed to by the municipal authority in conformity with its contracts with the holders of any bonds, and shall be valid whether or not an appropriation with respect thereto is made by such municipality prior to authorization or execution thereof. Such municipality is hereby authorized and directed to do and perform any and all acts or things necessary, convenient or desirable to carry out and perform every such contract and to provide for the payment or discharge of any obligation thereunder in the same manner as other obligations of such municipality. Subject to any such contracts with the holders of bonds, the municipal authority is hereby authorized to do and perform any and all acts or things necessary, convenient or desirable to carry out and perform every such contract and, in accordance with any such contract, to waive, modify, suspend or reduce the service charges which would otherwise be charged and collected by the municipal authority with regard to persons or real property within such municipality, but nothing in this section or any such contract shall prevent the municipal authority from charging and collecting, as if such contract had not been made, service charges with regard to such persons and real property sufficient to meet any default or deficiency in any payments agreed in such contract to be made by such municipality.
Subsequent amendments to the statute made no changes relevant to this case.