JOHN GALLO, ALAINE FINNERTY AND JAMES DOW, PLAINTIFFS, v. TOWNSHIP COMMITTEE OF WEEHAWKEN, WALLY LINDSLEY, MICHAEL TABAT, STEPHEN WEIL, ROBERT SOSA AND THE WEEHAWKEN MUNICIPAL PORT AUTHORITY, MICHAEL TABAT, STEPHEN WEIL, WALLY LINDSLEY, JOHN FEDERER, AND THOMSON MCKINNON SECURITIES, INC., DEFENDANTS.

Superior Court of New Jersey
Law Division Hudson County

Decided September 24, 1981.

386

*George B. Campen* for plaintiffs (*Farmer & Campen*, attorneys).

*Michael R. Perle* for defendant Township Committee of Weehawken (*Shain, Perle, Rafanello, Schaffer & Irish*, attorneys).

*Thomas A. DeClemente* for defendants Weehawken Municipal Port Authority and *Michael Tabat, Stephen Weil, Wally Lindsley* and *John Federer* (*DeClemente & Klitzner*, attorneys).

*Michael J. Herbert* for defendant-intervenor Thomson McKinnon Securities, Inc. (*Sterns, Herbert & Weinroth*, attorneys).

CASTANO, J. S. C.

This is an action in lieu of prerogative writs challenging a proposed $17,715,000 bond issue by the Weehawken Municipal Port Authority.

The dispute centers on a proposed real property lease between the Township of Weehawken and the Authority which is an integral part of the bond issue and which plaintiffs, three members of the township committee who voted against entering into the lease, claim is illegal. For reasons hereinafter set forth, I conclude the lease is unlawful and enjoin the Authority from issuing the bonds.

The bond issue was designed to raise the funds needed for acquisition of certain land and facilities on which the Authority plans to erect a refrigeration plant and warehouse and loading facilities which it then intends to lease to two private business concerns on a turnkey basis.

Neither the Authority nor the two business concerns, however, have the credit standing to support a bond issue of the magni-

tude proposed. The township does. The proponents, apparently recognizing that direct financial backing by the municipality is precluded, shaped a circular stratagem to avoid prohibitions in the Municipal Port Authorities Law, *N.J.S.A.* 40:68A–29 *et seq.* and still get the strength of the township's credit.

The Authority was to purchase certain land and facilities for $3,000,000. It then proposed to lease the premises thus acquired to the township for a rent which each year would equal the debt service on the bonds.

The township, in turn, was to lease the same land and facilities back to the Authority for an amount which annually would equal the debt service on the bonds plus an additional sum of $350,000. The Authority then planned to sublease the premises to the two private concerns, who were to take possession after the Authority improved the premises to their specifications. Closings on all transactions were to occur at substantially the same time.

Defendants contend that since the township's obligation under the proposal is limited to the rental which accrues annually, and which, under the authorization of *N.J.S.A.* 40A:12–6(a) in the Local Land and Buildings Law, it may treat as an annual appropriation item in its regular budget, the arrangement cannot be regarded as a guarantee.

The proscription of municipal guarantees in the Municipal Port Authorities Law is not unique. In at least five instances in the past 35 years when the Legislature empowered a municipal authority to issue bonds, it provided specifically in the statute that the bonds were not to become a debt or liability of the municipality.

The prohibition is found in *N.J.S.A.* 40:11A–9 which is part of the Parking Authority Law, *N.J.S.A.* 40:14B–33, part of the Municipal Utilities Authorities Law, and *N.J.S.A.* 40:68A–51, the statute involved here. The verbiage in each instance is substantially the same. See, also, *N.J.S.A.* 40:55C–13 and *N.J.S.A.* 40:66A–49.

Two of the sections have already been interpreted by courts asked to decide whether the Legislature thereby intended to prohibit municipalities from guaranteeing authority bonds indirectly as well as directly. The section in the Municipal Port Authorities Law has never been construed.

The first statute to receive judicial attention was *N.J.S.A.* 40:11A–9 in *De Lorenzo v. Hackensack*, 9 *N.J.* 379, 388 (1952), where the court declared:

> In [N.J.S.A. 40:11A–9] we find what we consider to be a legislative mandate against a municipal guarantee of the authority's bonds; it provides that the authority's bonds shall not be a debt of the State or any political subdivision thereof and that neither the State 'nor any political subdivision thereof shall be liable thereon.' Any attempt to evade this legislative mandate and the public policy it embodies such as portrayed by the agreements between the city and the authority, ought and will be struck down by the courts.

The Supreme Court determination occurred five years before enactment of the Municipal Utilities Authorities Law (*L.* 1957, *c.* 183) and eight years before enactment of the Municipal Port Authorities Law (*L.* 1960, *c.* 192). Notwithstanding, in these later statutes the Legislature repeated virtually the same language that had already been construed restrictively.

There can be no question that the Legislature was aware of the Supreme Court ruling because in 1958 it responded to *De Lorenzo* by amending *N.J.S.A.* 40:11A–9 specifically to permit a municipality to guarantee the bonds of a parking authority. A provision similar to the parking authority amendment, however, was not incorporated in either the Municipal Utilities Authorities Law the year before or the Municipal Port Authorities Law two years later.

Such was the posture of events when the Appellate Division was called upon to review *N.J.S.A.* 40:14B–33 pertaining to municipal utilities authorities in *Graziano v. Montville Tp.*, 162 *N.J.Super.* 552 (App.Div.1978), certif. den. 79 *N.J.* 462 (1978).

The *Graziano* court recognized that *De Lorenzo* was on the face of it dispositive of the guarantee issue, but was confronted with a section of the Municipal Utilities Authorities Law not

found in the original Parking Authority statute that seemingly created an inconsistency.

*N.J.S.A.* 40:14B–49, dealing with municipal utilities authorities, provided that:

> ... Any municipal authority and *any municipality* ... may enter into a contract or contracts ... relating to the sale or supplying of water .... Any such contract may provide for the payment ... *by such municipality annually or otherwise* of such sum or sums of moneys ... in lieu of all, or any part of the service charges which would otherwise be charged ... with regard to persons or real property within such municipality. Any such contract may be made ... for a specified or an *unlimited time* and on any terms and conditions which may be approved by such municipality ... and shall be valid whether or not an appropriation with respect thereto is made by such municipality prior to authorization or execution thereof.... [Emphasis supplied]

Despite the section's "sweeping terms," the court held that *N.J.S.A.* 40:14B–49 did not authorize a municipality to expressly guarantee the bonds of an authority. 162 *N.J.Super.* at 56. However, the court construed the section in a way that achieved virtually the same result as a guarantee when it held that, notwithstanding:

> *N.J.S.A.* 40:14B–49 authorized a municipality to enter into a contract ... in which the township agreed to pay to the MUA any deficit in revenues needed to pay bond amortization and operating costs. The actual obligation here may amount to less than a guarantee of the MUA's bonds. [162 *N.J.Super.* at 561–562]

*N.J.S.A.* 40:68A–51 must be viewed against the backdrop of the *De Lorenzo* and *Graziano* holdings.

The section is in all significant aspects the same as the one which the Supreme Court in *De Lorenzo* held was a mandate against a guarantee by a municipality of an authority's bonds. It is the same as the one which the Appellate Division in *Graziano* likewise held did not authorize the municipality to guarantee authority bonds.

■ The sole question, then, is whether there is any provision similar to *N.J.S.A.* 40:14B–49 in the Municipal Port Authorities Law which allows an indirect guarantee of the bonds.

*N.J.S.A.* 40:68A–58 is the parallel section. However, not only is it clearly distinguishable, the very distinction compels an opposite result.

*N.J.S.A.* 40:68A–58 provides in part:

> Any municipal port authority and any *person*, may enter into a contract or contracts ... relating to use or lease of all or any part of the port system ... Any such contract may provide for the payment to the municipal port authority annually or otherwise ... Any such contract may be made ... for a specified or an *unlimited time* and on any terms and condition which may be approved and agreed to by the municipal port authority ...." [Emphasis supplied]

The distinction is immediately obvious. *N.J.S.A.* 40:14B–49 provides that "any municipal authority and *any municipality* ... may enter into a contract or contracts...." *N.J.S.A.* 40:68A–58 provides that "any municipal ... authority and *any person* may enter into a contract or contracts...." The question is: Does *person* in the Port Authorities Law include municipality?

*N.J.S.A.* 40:68A–31 is the definition section of the Municipal Port Authorities Law. It provides that:

> *Person shall mean any person*, association, corporation, nation, State or agency or subdivision thereof, or other entity, real or artificial, public or private, *other than* a county or a *municipality* or a municipal port authority. [Emphasis supplied]

Clearly then, the Legislature has consciously withheld from municipalities when dealing with port authorities the sweeping powers it granted to them when dealing with municipal utilities authorities. Consequently, even an indirect guarantee by a municipality such as was approved in *Graziano* is unauthorized in dealing with municipal port authorities.

The only other provision which even remotely might be interpreted to authorize a guarantee of bonds by a municipality is found in *N.J.S.A.* 40:68A–45, which, after an authorization to issue the bonds, says, "Any such bonds may be additionally secured by a pledge of any grant or contributions from ... any municipality...."

However, the same language is found in *N.J.S.A.* 40:11A–21 and was considered by the Supreme Court in *De Lorenzo*, when it pointed out that:

The city and authority contend that L.1948, c. 198, contains adequate provision authorizing such contributions and refer particularly to section 21 which provides that any city "shall have the power from time to time to grant, appropriate, donate, contribute, or lend money to such authority or to agree to take such action," and section 8 which provides that the authority's bonds "may be additionally secured by a pledge of any grant or contributions from the Federal Government, State or county, or municipality." [9 *N.J.* at 386]

Nevertheless, it concluded:

Nowhere in L.1948, c. 198, [the Parking Authority Law] or in comparable legislation elsewhere is there any suggestion that the municipality's grant or aid may extend to a municipal guarantee of the parking authority's bonds. [*Id.* at 388.]

■ Under settled principles, therefore, the guarantee of the bonds by Weehawken under the guise of a lease is declared illegal. Since the lease is pivotal to the proposed bond issue, the bond issue is unlawful and the Weehawken Municipal Port Authority is hereby enjoined from issuing the bonds.

This disposition makes it unnecessary to decide a number of other issues raised by both sides except for one. Defendants contended that this action is barred by *N.J.S.A.* 40:68A–47.

■ Both that statute and a rule of court, *R.* 4:69–6(b)(11), impose a 20-day limitation which runs from the first publication of the notice of adoption of the bond resolution for the institution of any action to question the validity of bonds.

The notice of adoption here was published on June 18. The complaint was filed on August 5, 48 days later.

The rule, however, provides in *R.* 4:69–6(c) that

The court may enlarge the period of time ... where it is manifest that the interest of justice so required.

There is no like provision in the statute. However, in the appropriate case the time may be extended under the rule even if no similar provision appears in the statute. *Wilson v. Long Branch,* 27 *N.J.* 360, 381 (1958), *cert.* den. 358 *U.S.* 873, 79 *S.Ct.* 113, 3 *L.Ed.2d* 104 (1958).

■ Cases where courts may enlarge the period of time include those "involving (1) important and novel constitutional questions; (2) informal or ex parte determinations of legal

questions by administrative officials; and (3) important public rather than private interests which require adjudication or clarification." *Brunetti v. New Milford*, 68 *N.J.* 576, 586 (1975).

■ The unlawful guarantee of a $17,715,000 bond issue by a municipality is a matter of important public interest requiring adjudication. The interest of justice would demand that the period of time be enlarged, if need be.

■ Here it is not necessary since the action was not started late. The municipality did not adopt the ordinance authorizing the lease until July 22 and this challenge is actually directed at that ordinance. Therefore, this action is governed by the 45-day provision of *R.* 4:69–6(a). When they filed their suit plaintiffs were well within time.