**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2767-24

IN THE MATTER OF THE
ESTATE OF VERONICA E.
CARTER, deceased,

JAMAL CARTER,

    Plaintiff-Appellant,

v.

SHAINA NAYA JONES,

    Defendant-Respondent.

_____

        Submitted April 21, 2026 – Decided April 28, 2026

        Before Judges Perez Friscia and Vinci.

        On appeal from the Superior Court of New Jersey, Chancery Division, Camden County, Docket No. CP-000266-24.

        Jamal Carter, self-represented appellant.

        Respondent has not filed a brief.

PER CURIAM

Petitioner Jamal Carter, self-represented, appeals from the April 10, 2025 Chancery Division, Probate Part order denying his motion for the trial court's recusal.[1]  Jamal also appeals from the April 4, 2025 order granting summary judgment dismissal of his complaint, which contested the admission of Veronica E. Carter's Last Will and Testament (Will) to probate.  He additionally appeals from a companion order denying his motion to invalidate the Will based on fraud and to vacate prior orders.  Having reviewed the record, Jamal's arguments, and applicable law, we affirm.

I.

On October 14, 2023, Veronica executed her Will, revoking any previously signed testamentary instruments.[2]  Veronica's signing of her Will was witnessed by her friends, Tonya Little and Wakida Townsend, who were present

---

[1]  Because this matter involves family members with the same surname, we use their first names.  We intend no disrespect.

[2]  Jamal has failed to submit in his appendix a copy of Veronica's entire Will, which he alleges the court erred in admitting to probate.  Additionally, he has submitted only parts of documents he references as material on appeal.  See R. 2:6-1(a)(1)(I) (stating the appendix must contain parts of the record "essential to the proper consideration of the issues").  "We are not 'obliged to attempt review of an issue when the relevant portions of the record are not included.'" State v. D.F.W., 468 N.J. Super. 422, 447 (App. Div. 2021) (quoting Cmty. Hosp. Grp., Inc. v. Blume Goldfaden Berkowitz Donnelly Fried & Forte, P.C., 381 N.J. Super. 119, 127 (App. Div. 2005)).  We have nevertheless considered his arguments based on the record provided.

at Veronica's residence when she signed the Will. Veronica initialed each page of the Will. She thereafter passed away on August 7, 2024.

Veronica had one biological son, Jamal. In separate provisions of the Will, Veronica stated, "I have intentionally left no provision in this . . . Will . . . for JAMAL," and "I have purposely left no provisions in this. . . Will . . . for JAMAL." Veronica's Will also stated she had "the following children: JAMAL . . . and SHAINA JONES." Veronica bequeathed Jones her entire estate and appointed Jones as the "[e]xecutor of [the] Will." The Will named Jones as her "beneficiary" and "[her] daughter," listing Jones' address and a partially redacted social security number. Jones, while not Veronica's biological daughter, had a familial type of relationship with Veronica and called her "mom."

On October 3, 2024, Jamal filed a verified complaint and order to show cause (OTSC) requesting the court to restrain Jones from taking any action, invalidate Veronica's Will, remove Jones as the executor, appoint him as the administrator of Veronica's estate, require Jones to return dispersed assets and provide an "accounting," and order an investigation of Jones. Jamal argued Jones was not Veronica's daughter and because Veronica's Will referenced Jones as her daughter, "it invalidate[d] the [W]ill." Regarding his relationship with his mother, Jamal contended it did not "matter" whether he "ha[d] a relationship

A-2767-24

with" her.  He further argued the Will was "not notarized" nor prepared by "legal counsel."

On November 18, 2024, the court issued an order denying without prejudice Jamal's application to invalidate the Will and be appointed as the administrator of Veronica's estate.  However, the court granted the request for Jones to provide an informal accounting.  Jones was also ordered to "marshal" the assets without making any "disbursements."  The court recognized Jones was "paying the mortgage payments from her own funds."  The court directed the parties to conduct discovery within ninety days.  Jamal thereafter moved for reconsideration of the November 18, 2024 order, which the court denied.

After Jones moved for permission to sell Veronica's residence, the court on January 24, 2025, appointed Carla Fowler as the Administrator CTA pursuant to N.J.S.A. 3B:10-15.  Fowler was authorized to sell Veronica's residence and hold the proceeds in escrow, pending resolution of Jamal's will contest.  On January 27, 2025, Jamal moved to stay "all probate proceedings" because he had referred Jones to police for a "criminal investigation" and there was a pending municipal court proceeding.  The court denied the stay and ordered that Fowler's sale of Veronica's residence was "not to be interfered with by any party."  Jamal

had filed a lis pendens on the property that was later "discharged" on February 21, 2025.

On February 27, 2025, Jones moved for summary judgment, seeking dismissal of Jamal's complaint. Jamal opposed the motion, contending there were material issues of fact regarding the validity of the Will, Jones' fraudulent actions, and whether Veronica was under undue influence and had capacity to execute the Will. He specifically asserted there were "[s]uspicious [c]ircumstances" and "capacity questions" surrounding the execution of the Will.

On March 4, 2025, Jamal cross-moved for the court to issue "an immediate written ruling on [Jones'] documented fraud" and to vacate all prior adverse probate orders. He argued Jones had conducted unauthorized financial transactions and breached her fiduciary duties because Veronica's death certificate wrongly listed Jones as a daughter and Veronica's residence was sold in error. He also filed an OTSC to stay the proceedings and reinstate his lis pendens filed against Veronica's residence.[3]

On March 6, 2025, Jamal moved for the court's recusal from hearing his applications. Jamal accused the court of "improper directives and

---

[3] We note it is unclear from the record the date on which the OTSC was filed.

A-2767-24

communications[, which] create[d] the appearance of ex parte coordination" and "systematic bias." Jamal further alleged there was a conflict of interest between the court "and the Camden County Surrogate's Office," enabling a "fraudulent scheme" and compromising "the integrity of the judicial process."

On April 4, 2025, the court heard argument on Jones' summary judgment motion and Jamal's cross-motions. The court first heard Jamal's motion for recusal, specifically addressing his accusations that the court had played a "pivotal role in facilitating a fraudulent scheme" and there was "an inherent conflict of interest" between the court and the Surrogate's Office. The court denied the motion, finding Jamal "presented absolutely no information to . . . support any of" the allegations and his statements of a grand fraudulent scheme were "unsupported."

Regarding his motion to invalidate the Will and vacate prior orders, Jamal argued Jones used Veronica's credit card "to pay for funeral expenses" and was not an authorized user on the credit card. He argued Jones was fraudulently listed on Veronica's death certificate as "daughter." Jones responded that "[n]o fraud was committed in the listing of [her name] as daughter in either . . . [Veronica's] [W]ill" or on "the death certificate." She explained Veronica referred to her as "daughter" and she called Veronica "mother."

The court denied Jamal's motion, finding his allegations were unsupported and did not provide "any basis or reason to invalidate [Veronica's] [W]ill . . . that [wa]s . . . properly executed." The court explained that while Jones was undisputedly not Veronica's daughter, Veronica was not prevented from using the term "daughter" and bequeathing Jones her estate. The court further denied Jamal's OTSC to stay proceedings and reinstate the lis pendens filed against Veronica's residence.

In support of her summary judgment motion, Jones argued the undisputed material facts supported dismissing Jamal's complaint because the validity of Veronica's Will was established. Regarding Jamal's assertions of undue influence and lack of capacity, Jones highlighted that Veronica had a terminal illness, but she was "competent" and exercised her "testamentary intent on October 14[, 2023,] when she created and signed her . . . [W]ill." Jones argued no "undue influence was exerted upon . . . [Veronica] to create her [W]ill or to disinherit her son, Jamal." She asserted the supporting affidavits established the Will's validity and Jamal "ha[d] not provided one element of proof or fact to substantiate any of his allegations." Jamal countered that Veronica's Will was "self-authored," Little was a "proven colluder," Veronica was under undue

influence as she was "[sixty-six] years of age and . . . had a terminal illness," and Jones was "not blood related."

After argument, the court granted Jones' summary judgment motion, finding Veronica's Will was "signed," "initial[ed]" on "every page," and "witnessed" by Little and Townsend. While observing Jamal found it difficult to be "specifically disinherit[ed]" by his mother, the court found he failed to demonstrate any support of undue influence or lack of capacity to prevent granting summary judgment. The court determined Jamal's "supposition and conspiracy theories" were insufficient to "invalidate the [W]ill" and "shift the burden to" Jones.

On appeal, Jamal argues reversal is warranted because: (1) the court "lost jurisdiction by refus[ing] to adjudicate [his] fraud allegations," resulting in "all subsequent orders [being] void ab initio"; (2) the court "refus[ed] to adjudicate fraud under N.J.S.A. 3B:1-9 before proceeding," "violat[ing] mandatory law and render[ing] all orders void"; (3) the Will falsely lists "two children," "creat[ing] an inescapable legal trap where all scenarios render the [W]ill void as a matter of law"; (4) "violation[s] of mandatory probate procedures denied due process and voids all proceedings ab initio"; and (5) the court's "grant[ing] of summary

judgment [while there were] pending criminal proceedings and with knowledge of estate-funded defense violated due process."

## II.

Our review of a trial court's summary judgment decision is de novo. DeSimone v. Springpoint Senior Living, Inc., 256 N.J. 172, 180 (2024); see also R. 4:46-2(c). "The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). "A dispute of material fact is 'genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.'" Gayles by Gayles v. Sky Zone Trampoline Park, 468 N.J. Super. 17, 22 (App. Div. 2021) (quoting Grande v. Saint Clare's Health Sys., 230 N.J. 1, 24 (2017)).

"Summary judgment should be granted 'if the discovery and any affidavits show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" DeSimone, 256 N.J. at 180-81 (quoting Perez v. Professionally Green, LLC, 215

N.J. 388, 405 (2013)) (internal quotation marks omitted). Insubstantial arguments based on assumptions or speculation are not enough to overcome summary judgment. Brill, 142 N.J. at 529; see also Dickson v. Cmty. Bus Lines, Inc., 458 N.J. Super. 522, 533 (App. Div. 2019) ("'[C]onclusory and self-serving assertions by one of the parties are insufficient to overcome' a motion for summary judgment." (quoting Puder v. Buechel, 183 N.J. 428, 440-41 (2005))).

A will executed in accordance with N.J.S.A. 3B:3-2 shall be: "(1) in writing"; "(2) signed by the testator"; and "(3) signed by at least two individuals, each of whom signed within a reasonable time after each witnessed either the signing of the will . . . or the testator's acknowledgment of that signature or acknowledgment of the will." A document that fails to strictly comply with the provisions of N.J.S.A. 3B:3-2 can be admitted as a will if "the proponent of the document or writing establishes by clear and convincing evidence that the decedent intended the document or writing to constitute . . . the decedent's will." N.J.S.A. 3B:3-3.

It is presumed that a testator was competent and of sound mind when he or she executed a will. Haynes v. First Nat'l State Bank of N.J., 87 N.J. 163, 175-76 (1981). The court should admit a testator's will to probate when "the evidence is compelling as to the testamentary sufficiency of the document, its

preparation[,] and [its] reflection of decedent's intent." In re Est. of Ehrlich, 427 N.J. Super. 64, 76 (App. Div. 2012).

Rule 4:85-1 states that once a will is probated, or letters testamentary are issued by the Surrogate's Court, "any person aggrieved by that action may, upon the filing of a complaint[,] . . . obtain an order requiring the personal representative . . . to show cause why the probate should not be set aside or modified or the grant of letters of appointment vacated."

## III.

We first address Jamal's contentions that the court erred in refusing to adjudicate his allegations of fraud. The record demonstrates the court fully considered all of Jamal's fraud allegations and determined he failed to show a material issue of fact supported invalidating the Will. The court correctly found Veronica was permitted to execute a self-authored will and was not required to have her signature notarized. Additionally, Veronica's naming Jones as her "daughter" was insufficient to support fraud. Jamal offered no material facts refuting that Veronica signed her Will, which Little and Townsend witnessed, and the Will had Veronica's initials on each page. Therefore, the court's finding that Veronica's Will satisfied N.J.S.A. 3B:3-2 is sufficiently supported by the record.

A-2767-24

Further, Jamal demonstrated no evidence that there was undue influence or lack of capacity. We are unpersuaded by Jamal's assertion that a material issue of fact exists because Veronica was about sixty-six years of age and had a terminal illness. Veronica signed her Will in October 2023, approximately ten months before her passing. "There is a legal presumption that 'the testator was of sound mind' when he [or she] executed the will." In re Will of Liebl, 260 N.J. Super. 519, 524 (App. Div. 1992) (quoting Haynes, 87 N.J. at 175-76). Further, testamentary capacity is determined by "whether the testator can comprehend the property he is about to dispose of; the natural objects of his bounty; the meaning of the business in which he is engaged; the relation of each of these factors to the others[;] and the distribution that is made by the will." In re Livingston's Will, 5 N.J. 65, 73 (1950). Jamal has not demonstrated a genuine issue of material fact that Veronica was unduly influenced or lacked capacity. For these reasons, we discern no error in the court's denial of Jamal's motion to invalidate the Will and in granting Jones' motion for summary judgment.

We also reject Jamal's argument that the court improperly granted Jones' summary judgment motion while there was a criminal proceeding pending. The fact that Jamal filed a municipal court action was not cause for the court to stay

12

the motions. The court did not abuse its discretion in denying Jamal's request to stay proceedings.

Finally, we address Jamal's assertions that the court erred in denying his recusal motion after demonstrating "bias" and "disparate treatment." Generally, recusal motions are "entrusted to the sound discretion of the judge and are subject to review for abuse of discretion." State v. McCabe, 201 N.J. 34, 45 (2010). The record is bereft of a single fact supporting Jamal's contentions. To the contrary, the transcripts of the proceedings demonstrate that the court exhibited great patience and provided Jamal a full opportunity to present each of his arguments, many of which were repetitive. Based on our review, there are no "doubts about the judge's impartiality." State v. Dalal, 221 N.J. 601, 606 (2015) (quoting DeNike v. Cupo, 196 N.J. 502, 517 (2008)).

To the extent not addressed, Jamal's remaining arguments lack sufficient merit to warrant discussion in our written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-2767-24