188 N.J. Super. 244 (1982)
457 A.2d 59
THE BOARD OF EDUCATION OF THE TOWNSHIP OF FAIRFIELD, ET AL., PLAINTIFFS,
v.
THOMAS KEAN, GOVERNOR OF THE STATE OF NEW JERSEY, ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division Essex County.
Decided September 28, 1982.
*245 Nathanya G. Simon for plaintiffs (Schwartz & Pisano, attorneys).
Allan P. Dzwilewski for plaintiff-intervenor (Green & Dzwilewski, attorneys).
Charlotte Kitler for Executive Branch defendants (Irwin I. Kimmelman, Attorney General, attorney).
Lawrence T. Marinari for Joint Appropriation Committee and General Assembly defendants (Marinari & Farkas, attorneys).
Leon J. Sokol for Joint Appropriations Committee and Senate defendants (Greenstone & Sokol, attorneys).
STANTON, J.S.C.
The principal plaintiff is a local school district which challenges the formula used by the Legislature to reduce minimum state aid to local school districts by $14,000,000 for the fiscal year ending June 30, 1983. A second intervening school district and various local school officials are the remaining plaintiffs. Defendants are the Governor, various Executive Branch officials and departments, and various legislative officers and bodies. Plaintiffs claim that the reduction violates the State Constitution's thorough and efficient education requirement (N.J. Const. (1947), Art. VIII, § IV, par. 1), the "Equal Protection Clause" of the State Constitution and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. (Strictly speaking, there is no equal protection clause in the New Jersey Constitution. Presumably, plaintiffs are referring to equal protection concepts embodied in the Rights and Privileges Article of the State Constitution. See N.J. Const. (1947) Art. I, Par. 1 and 5.)
*246 At the conclusion of oral arguments I dismissed the complaint as it related to the legislative officers and bodies on the ground that they are not appropriate parties. I now grant the motion for summary judgment which has been brought by the Attorney General on behalf of the remaining defendants. There are no disputed issues of material fact in this case. The challenged legislation is clearly valid. There will be judgment in favor of defendants on all issues raised in the complaint.
The constitutional issues involved in the New Jersey system for financing public education have been exhaustively set forth by our Supreme Court in the five Robinson v. Cahill decisions: 62 N.J. 473 (1973), 63 N.J. 196 (1973), 67 N.J. 35 (1975), 69 N.J. 133 (1975) and 69 N.J. 449 (1976). There is no point in any extensive discussion of those issues by a trial court judge. In the first Robinson v. Cahill decision, 62 N.J. 473 (1973), the Supreme Court held that the New Jersey system for financing public education violated the state constitutional provision requiring the Legislature to provide for the maintenance and support of a thorough and efficient system of free public schools. The vice of the system, as seen by the Supreme Court, was that it relied too heavily on local taxation. A wealthy school district with substantial real estate tax ratables per pupil could readily afford large expenditures per pupil, while a poor district did not have the tax revenues available for adequate per pupil funding of education. The result was a wide disparity in expenditures per pupil, depending upon the local school district in which the pupil happened to reside.
None of the Robinson v. Cahill decisions required the State to take over all funding of public education, and none of them required strict equality in per pupil expenditure throughout the State. I think it can fairly be said that the end result of the decisions was that the State was required to spend more money raised through statewide general taxes (as contrasted with local property taxes) on public education; that the State had to guarantee that every child in the State received a fundamentally adequate education, and that substantial revenues raised by *247 the State had to be committed to reducing the disparity in per pupil spending between wealthy and poor districts.
The Public School Education Act of 1975, N.J.S.A. 18A:7A-1 et seq., was adopted by the Legislature after the fourth Robinson v. Cahill decision, 69 N.J. 133 (1975). It represented a monumental effort by the Legislature to deal comprehensively with its obligations under the thorough and efficient education clause of the State Constitution. Key financial provisions of the act are found in N.J.S.A. 18A:7A-18. The basic thrust of N.J.S.A. 18A:7A-18, as set forth in subsection (a) thereof, was to direct heavy state aid for current expenses of local school districts to those districts which had low property tax ratables per student. A secondary thrust, as set forth in subparagraph (b) thereof, was to give some minimum state aid for current expenses to every local school district in the State. The Supreme Court had been very critical of minimum aid concepts in the fourth Robinson v. Cahill decision. See 69 N.J. 147-150. Nevertheless, in the fifth Robinson v. Cahill decision the court accepted the kind of minimum aid provided in N.J.S.A. 18A:7A-18(b) because it was part of a scheme which seemed to make significant progress towards eliminating gross disparities in per pupil expenditures.
The court expressed its views on minimum aid in these terms:
In Robinson IV we ordered the reallocation of educational funds which were to be appropriated for minimum aid on a per pupil basis to the end that the average valuation per pupil throughout the State would more nearly be equalized. However, we did not hold that minimum aid was per se unconstitutional. We found it improper in the light of the gross disparities in per pupil expenditures and tax resources existing in the school funding program there under review. The 1975 Act continues to make some provision for minimum aid upon a per pupil basis; but, when viewed in the context of the overall act which, as heretofore noted, has taken positive steps to eliminate gross disparities in per pupil expenditures and tax resources, such provision cannot be said to be unconstitutional. Only actual experience with the Act will demonstrate whether there is need for further adjustment or modification. [69 N.J. at 467]
Chief Justice Hughes and Judge Conford were obviously perturbed by the minimum aid provisions of the 1975 act. See the concurring opinion of Chief Justice Hughes, 69 N.J. at 472-473, *248 and the concurring and dissenting opinion of Judge Conford, 69 N.J. at 477-478. I think it fair to say that the minimum aid provisions of N.J.S.A. 18A:7A-18 have barely passed constitutional muster before the New Jersey Supreme Court. An amendment to N.J.S.A. 18A:7A-18 in 1978 limited the minimum aid going to wealthy local school districts. L. 1978, c. 158. However, the concept of minimum aid to every district remains in the statute, and that concept is not readily compatible with the basic thrust of the Robinson v. Cahill decisions which is to sharply reduce disparities in the per pupil expenditures of local school districts.
It is against the foregoing background that I must view the legislation which is challenged in this present action. The legislation (which will hereafter be called "Joint Resolution 471") started as a resolution of the Joint Legislative Appropriations Committee. It was adopted by the Senate and General Assembly as part of the General Appropriations Act for the fiscal year ending on June 30, 1983. After signature by the Governor the General Appropriations Act became law on June 30, 1982. L. 1982, c. 49. Joint Resolution 471 first reduced the recommended appropriation for General Formula Aid, Minimum Aid, by $14,000,000. It then provided as follows:
Notwithstanding any other law to the contrary, the Commissioner of Education shall establish the guaranteed valuation per pupil and the minimum aid guaranteed valuation per pupil at a level required to distribute, without proration, the amounts hereinabove appropriated for Current Expense Equalization Aid, Minimum Aid and School Building Aid, less such amounts as are reserved to fund County Special Services School Districts and adjustments due to tax appeals and other factors; provided, however, that districts shall receive aid pursuant to subsection b of N.J.S. 18A:7A-18 and paragraph 2 of N.J.S. 18A:7A-24 only if they meet any two of the following three criteria for the prebudget year:
1. A district equalized valuation per pupil of less than $220,276.00;
2. A net current expense budget per pupil of less than $3,324.00;
3. A resident enrollment greater than 969 pupils.
Plaintiff Board of Education of the Township of Fairfield has lost all of its minimum school aid for the school year 1982-83, as has intervening plaintiff Board of Education of the Borough of *249 Totowa.[1] Statewide, approximately 85 local school districts (out of a total of about 600) have lost all state minimum aid under the provision of Joint Resolution 471. Plaintiffs question the soundness of the three criteria for aid set forth in Joint Resolution 471. They argue that those criteria are discriminatory, arbitrary and unreasonable. They also argue that they violate the state and federal constitutional rules discussed in the Robinson v. Cahill decisions.
The criteria set forth in Joint Resolution 471 are not perfect. However, they are rather clearly designed to identify with acceptable general accuracy the wealthiest school districts in the State and to eliminate General Formula Aid, Minimum Aid, for those districts. It may be unfortunate that the Legislature found it necessary to reduce state appropriations for public school education by any amount. However, once the Legislature decided to make a reduction, it has to be conceded that it is arguably sound social policy to impose the reductions upon the wealthiest districts. The wealthiest districts presumably have the local resources to fund an adequate educational program despite the loss of this kind of state aid. Regardless of what one thinks of the social policy involved, plaintiffs fundamentally misread the Robinson v. Cahill decisions when they argue that the policy violates the rules of those decisions and is unconstitutional. It does not violate equal protection concepts of the New Jersey or United States Constitutions, and it does not violate the thorough and efficient education clause of the State Constitution to impose this kind of reduction in state aid upon the wealthiest school districts in the State. On the contrary, this kind of reduction is constitutionally much less suspect than a reduction indiscriminately imposed upon all the school districts in the State, including the poorest.
Plaintiffs apparently believe that the Robinson v. Cahill decisions give their districts some sort of basic constitutional entitlement *250 to minimum state aid. Almost the exact opposite is true. The Robinson v. Cahill decisions are essentially hostile to the concept of minimum aid to all districts because those decisions view minimum aid as being counterproductive to the goal of eliminating disparity in per pupil expenditures. Far from being constitutionally desirable, minimum aid is a highly suspect way of giving state aid to local school districts.
Plaintiffs intimate that there is something constitutionally suspect about the Legislature's deciding to take $14,000,000 from the General Formula Aid Minimum Aid, appropriation for education. In the first place, it must be said that, in terms of the current New Jersey State Budget, $14,000,000 is a relatively modest sum. The New Jersey Constitution requires a balanced budget and, when expenditure cuts are necessary to achieve a balanced budget, the State Constitution assigns the basic responsibility to the Legislature and the Governor for making the decisions about the cuts. The plaintiffs obviously think that this $14,000,000 should have been cut some place other than in the education budget. Perhaps plaintiffs are right, but they should be making their argument in that regard to the Legislature and the Governor. It is a rare case  and the present case is most certainly not one of them  in which the judiciary has any proper constitutional role in making budget allocations.
Plaintiffs complain that the cuts in State aid imposed upon them came so late in the year that they had already had their local budgets approved in anticipation of a normal share of state aid. They now find it very difficult to make adjustments for the present school year. They urge that principles of reasonable reliance and estoppel should be invoked to prevent any substantial cut in state aid for the 1982-1983 school year. I agree with plaintiffs that it would have been better for them to have received some advance warning of these cuts. They were, through no fault of their own, taken by surprise. However, equitable rules of estoppel simply are not applicable in this area of inter-governmental relationships. The fact that plaintiffs *251 reasonably relied on getting their normal aid does not afford any basis for judicial relief.
It has been argued that it is poor legislative practice to amend the general statutory rules established by the Public School Education Act of 1975 through an ad hoc provision inserted in an appropriations act. That argument may be sound from a political science viewpoint, but the Legislature was legally free to proceed in this fashion.
One may or may not agree with the policy, or the technique, or the timing, of Joint Resolution 471. Be that as it may, the legal and constitutional reality is that Joint Resolution 471 is clearly valid. There will be judgment for the defendants. The Attorney General should submit a form of judgment. No costs.
NOTES
[1] The loss for Fairfield is $142,272; for Totowa $189,176.