840 A.2d 266

NEW JERSEY EDUCATION ASSOCIATION, APPELLANT, v. WILLIAM LIBRERA, COMMISSIONER OF EDUCATION AND NEW JERSEY DEPARTMENT OF EDUCATION, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted December 3, 2003—Decided January 14, 2004.

Before Judges KESTIN, CUFF and AXELRAD.

*Zazzali, Fagella, Nowak, Kleinbaum & Friedman,* attorneys for appellant (*Richard A. Friedman,* of counsel; *Edward M. Suarez, Jr.,* on the brief).

*Peter C. Harvey,* Attorney General, attorney for respondent (*Patrick DeAlmeida,* Deputy Attorney General, of counsel; *Michael C. Walters,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

KESTIN, P.J.A.D.

On August 14, 2002, the Assistant Commissioner of Education for Educational Programs and Assessment sent a memorandum to chief school administrators and charter school lead persons on two subjects, one of which was "Mentoring New Teachers in 2002–2003." That portion of the memorandum dealt with "[g]uidelines for mentoring programs in light of the elimination of funding for the program[.]" The stated purpose of the memorandum was "to get critical information out as efficiently as possible[;] ... consolidating the information can help us get it to you faster."

By way of background on the subject of mentoring, the memorandum referred to "changes in the mentoring requirements for new teachers ... introduced in the 2001–2002 academic year[,]" and described the budgeting program that had been put in place at the time. The memorandum went on to note that the Legislature had eliminated mentoring funds from the Department's proposed budget for the 2002–2003 year. It informed the recipients of the "key points ... and guidelines related to them" of an "opinion from the Office of the Attorney General regarding implications for districts."

The memorandum summarized the Attorney General's opinion as "indicat[ing] that the portions of the Administrative Code which are related to the use of state funding for the initiative are suspended; *however, those portions related to compliance with the State's licensing code cannot be suspended.*" The memorandum then outlined the "steps necessary to move forward[,]" clarifying how the funding development would affect administration of the program. This treatment was subdivided into three subtopics.

The first sub-heading was "Submission and Evaluation of Local Mentor Plans." It noted that because of the unavailability of funding, "final submission of district mentor plans will be postponed until fall 2003."

On the subject of "Payment for Mentoring Services[,]" the memorandum outlined existing substantive standards, repeating that those which were "part of state-regulated requirements for licensing ... cannot be suspended." Some details were covered, and the memorandum continued:

> Fees for mentoring services rendered have been in effect since 1985 and, unless modified by local agreements, these fees continue. It is the districts' responsibility to ensure that these payments are satisfied in one or more of the following ways:
> 1. Revert to prior practices under which the provisional teacher assumes total responsibility for paying the mentor teacher *pursuant to N.J.A.C. 6:11-3.2(c);*
> 2. Districts subsidize the payment of mentor teachers through use of district or other funds such as Title II;
> 3. Districts continue with other arrangements for payment in accord with locally developed agreements.

Finally on the subject of the mentoring program, the memorandum dealt with "Payment for Mentoring Services for Novice Teachers Employed After December 14, 2001[,]" noting:

> Because of the current financial situation, the state does not have available funds to pay for mentoring services for novice teachers employed between December 15, 2001 and the end of that school year. We continue to recognize the value of well-developed and well-implemented programs for novice teachers. We are developing plans to address the problems caused by the funding dilemma and to do so in time for your planning for 2003–2004.

The New Jersey Education Association (NJEA) challenged the validity of the memorandum's provisions in two proceedings implicating aspects of the Administrative Procedure Act (APA),

*N.J.S.A.* 52:14B–1 to –25. On September 27, 2002, the NJEA filed this appeal against the Commissioner of Education pursuant to *R.* 2:2–3(a)(2), "review [of] the validity of any rule promulgated by [a State administrative] agency," contending that the memorandum was a rulemaking that did not conform with APA requirements and was, therefore, invalid. On November 12, 2002, the NJEA filed a petition with the Commissioner for relief pursuant to *N.J.S.A.* 52:14B–8, the APA provision permitting "any interested person" to seek "a declaratory ruling with respect to the applicability ... of any statute or rule enforced or administered by [the] agency." The latter proceeding was referred to the Office of Administrative Law as a contested case. *See N.J.S.A.* 52:14B–2(b) and *N.J.S.A.* 52:14B–9; *compare N.J.S.A.* 52:14B–4(g). The Commissioner then filed a motion to dismiss this appeal for failure to exhaust administrative remedies by reason of the pendency of the administrative proceeding. The administrative law judge (ALJ) assigned to the declaratory-ruling proceeding placed that matter on the inactive list until we ruled on the motion before us. We denied the motion to dismiss the appeal, providing that the exhaustion issue could be argued in the merits briefs. We have not been informed of any change in the status of the administrative proceeding.

This appeal should not be dismissed on exhaustion grounds. The appellate review remedy conferred by *R.* 2:2–3(a)(2), a type of action in lieu of prerogative writs, *see* Pressler, *Current N.J. Court Rules*, comment 1 on *R.* 2:2–3 (2003), exists as a mechanism for testing "the validity of any rule promulgated by [an] agency or officer." That remedy exists independently of any right to administrative relief conferred by the APA, either by way of a declaratory ruling regarding "the applicability ... of ... [a] rule," *N.J.S.A.* 52:14B–8, or on a petition "to adopt a new rule or amend or repeal any existing rule," *N.J.S.A.* 52:14B–4(f), or via any other administrative process established in the APA. Although a situation may occur in which a validity determination cannot be made before applicability issues pending on the adminis-

trative level are resolved, this is not such an instance. The validity issue in this matter is ripe for resolution because the only questions before us are whether there was a need, considering the substance of the memorandum, to comply with the procedural requirements mandated by the APA for promulgating rules or regulations, and, if so, whether such compliance occurred.

That is not to say the ALJ was incorrect to hold the administrative matter in abeyance. Our determination regarding the validity of the action challenged herein might well have a bearing upon the issues raised in that matter as the ALJ initially, and the agency ultimately, proceed to a declaration regarding the applicability of existing statutes and regulations. In any proceeding, of course, legislative developments affecting the administrative scheme must be taken as a given.

■ Turning to the merits, we reject the premise of the appeal, that the memorandum was an "action by the Department ... implementing changes to the novice teacher mentoring regulations" that are invalid because they were promulgated "by memorandum instead of by formal amendment" in accordance with procedures mandated by the APA for rulemakings. Except to notify local school officials of the fact of legislative action suspending State funding of mentoring fees for new teachers, the memorandum adopted no new substantive standards within the agency's power to promulgate; and, except to advise the local officials of the necessary effects of the legislative action and to recommend alternative approaches while State funding remained suspended, the memorandum established no new procedural requirements for administering the program.

■ In its administration of the Teacher Mentoring Program, as in all other respects, the agency was obliged to function with fidelity to legislative mandates. *See Fairfield Township Bd. of Educ. v. Kean*, 188 *N.J.Super.* 244, 248–49, 457 *A.*2d 59 (Ch.Div.1982)(discussing the Legislature's constitutional authority in developing public policy). It had no choice on the question of funding except to discharge that obligation. *See City of Camden*

*v. Byrne,* 82 *N.J.* 133, 145–150, 411 *A.*2d 462 (regarding the Legislature's constitutional authority over State appropriations). NJEA argues that "the policies announced and implemented by the ... memorandum have the stated purpose of suspending and superseding duly-promulgated regulations already in effect, thereby constituting a 'material and significant change' to existing rules concerning payment for mentoring services." We reject that argument. The only existing rules that were "suspended" were those bearing upon the use of State funds for an aspect of the program which, by reason of the Legislature's determination, were no longer available. In issuing the memorandum, the agency acted conformably with the legislative mandate on a subject over which it had no choice. Previously existing alternatives to the funding gap were recommended as stopgaps. No new standards or procedures were adopted.

The agency was under no obligation, as NJEA argues in its reply brief,

> to provide State funds for the novice teachers employed in each district, [a duty] not contingent upon a specific earmarked legislative appropriation. Consequently, the Department must provide funding for all novice teachers employed by each district and the Department's obligation exists irrespective of whether funding has been appropriated by the Legislature which is specifically earmarked for mentoring. The Department, therefore, was required to fund the program or to repeal *N.J.A.C.* 6:11–14.8, the regulation which mandates funding.

Indeed, the agency could not provide the funding without violating the Legislature's policy determination, a result the agency was obliged to avoid.

 The impact of the no-funding development on those affected was, doubtless, serious. But that result was the product of the Legislature's determination to leave an aspect of the program unfunded, at least for the time being; the impact did not come from any discretionary, quasi-legislative action taken by an officer or agency in the Executive Branch of State government. The Legislature's action herein was essentially the same as the enactment of a statute nullifying or suspending any other regulation duly promulgated by a State agency. The memorandum at issue merely conveyed the information that the legislative decision

regarding funding had occurred, and it proposed steps which might be undertaken to cope with the development. The memorandum lacked the basic earmarks of a rulemaking, an administrative quasi-legislative exercise; it bore few of the qualities that characterize a rulemaking activity subject to the procedural requirements of the APA. *See Metromedia v. Division of Taxation,* 97 *N.J.* 313, 331–32, 478 *A.*2d 742 (1984). The remedy for the relief appellant seeks is with the Legislature, not with the agency or the courts.

The appeal is, therefore, dismissed.