813 A.2d 597 (2003)
356 N.J. Super. 527
STATE of New Jersey, Plaintiff-Respondent,
v.
Gerardo PEREZ, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued December 17, 2002.
Decided January 15, 2003.
Yale L. Greenspoon, Union, argued the cause for appellant (Greenspoon & Greenspoon, attorneys; Mr. Greenspoon, on the brief).
Simon Louis Rosenbach, Assistant Prosecutor, argued the cause for respondent (Bruce J. Kaplan, Middlesex County Prosecutor, attorney; Mr. Rosenbach, of counsel and on the brief).
Before Judges STERN, COBURN and COLLESTER.[1]
The opinion of the court was delivered by *598 COBURN, J.A.D.
Defendant, Gerardo Perez, was charged in municipal court with driving while intoxicated, N.J.S.A. 39:4-50; failure to keep to the right, N.J.S.A. 39:4-82; and refusal to submit to a breathalyzer test, N.J.S.A. 39:4-50.2. Before trial, defendant moved for recusal of the trial judge on the ground that he had demonstrated bias against "Spanish people," a group to which defendant belonged. The judge denied the motion without findings of fact or conclusions of law. Following trial, the judge found defendant guilty and sentenced him. Subsequently, the judge found defendant not guilty of the last charge. Defendant appealed to the Law Division, requesting a full testimonial trial on the ground that the municipal court judge's behavior evidenced bias against "Spanish people." The Law Division judge refused the request, conducted a trial de novo on the remaining charges, and found defendant guilty. On appeal, defendant argues:
POINT ONE
DEFENDANT SHOULD HAVE BEEN ACQUITTED OF THE CHARGE OF FAILING TO KEEP TO THE RIGHT BECAUSE NO PROOF WAS OFFERED REGARDING THE STATUTORY CHARACTERISTICS OF THE ROADWAY.
POINT TWO
DEFENDANT SHOULD HAVE BEEN ACQUITTED OF THE CHARGE OF DRIVING WHILE ITOXICATED BECAUSE THE STATE DID NOT PROVE THE ELEMENTS OF THE OFFENSE BEYOND A REASONABLE DOUBT.
POINT THREE
A NEW TRIAL SHOULD BE CODUCTED WHERE THE ORIGINAL TRIAL WAS TAINTED BY THE TRAL COURT'S APPEARANCE OF BIAS AGAINST THE DEFENDANT.
After carefully considering the record and briefs, we are satisfied that defendant's first two points are without sufficient merit to warrant discussion in a written opinion, R. 2:11-3(e)(2), and we turn to the third point, which requires reversal of the convictions and remand for a plenary trial.
In light of our disposition of the first two points, we will not set forth the facts bearing on those convictions other than to note that the State's case was opposed by testimony from defendant and others called on his behalf. In short, resolution of this case turned on the credibility of witnesses, and the Law Division judge accorded the usual deference to the municipal court judge's findings in that regard.
I
On August 23, 2000, the case was called for trial in the municipal court, and the following remarks were made:
[DEFENSE COUNSEL]: My client says he wants an interpreter.
THE COURT: For what language?
MR. PEREZ: Spanish.
THE COURT: How do you know what I just said?
(No audible response.)
THE COURT: You speak English.
[DEFENSE COUNSEL]: Hehe understands English. It's not his first language.
THE COURT: When are we going to stop this.
[DEFENSE COUNSEL]: I'm just telling you THE COURT: Can I go into court and say, I want a Celtic interpreter?
*599 [DEFENSE COUNSEL]: I'm just telling you what he told me, Judge.
THE COURT: Hey, I'm Irish. I want somebody who speaks Irish. That's it. The fact that I speak English, too, too bad. I want somebody who speaks Irish.
These Spanish people coming in here and saying, I want an interpreter.
Well, you speak English.
So what? I want an interpreter. Somewhere, this has got to stop. So, somebody racks up $200.00 an hour for interpreting and the guy speaks perfect English, proved by the fact that he understood exactly what you and I just said.
Why don't you speak English, sir?
(No audible response.)
THE COURT: Why do you want an interpreter?
(No audible response.)
THE COURT: You did learn in a hurry, didn't you?
(Laughter)
THE COURT: You've got to give them credit. They justhe picked up on that quick.
Well, I guess I better do it. I'd have the ACLU and the people marching outside with signs and so forth.
[DEFENSE COUNSEL]: I know you have an interpreter coming tonight.
THE COURT: Won'twon't help.
All right. We'll have an interpreter here.
[DEFENSE COUNSEL]: Okay. You can just wait back there.
COURT OFFICER: He has the $200.00?
[DEFENSE COUNSEL]: He'she's waiting for the $200.00.
(The Court attends to other business.)
THE COURT: All right, counselor. The case is adjourned.
[DEFENSE COUNSEL]: Thank you, Judge.
THE COURT: We'll have to get an interpreter. Okay.
COURT OFFICER: Which case is this, Judge?
THE COURT: This isuhPerez.
[DEFENSE COUNSEL]: Perez.
[PROSECUTOR]: Perez.
THE COURT: PerezGerardo Gerardo Perez.
[DEFENSE COUNSEL]: Thank you, Judge.
Thereafter, defendant moved in writing for the judge to recuse himself for showing bias against defendant. At the beginning of the trial, which occurred on December 27, 2000, defendant's counsel noted that the judge had denied the motion, apparently by a written order. No reasons were placed on the record for the denial. At the conclusion of the municipal court trial, this exchange occurred during sentencing:
MR. PEREZ (through Interpreter): I pay you $500.00 today and then what? And then 15 days later I have to pay you $150.00?
THE COURT: I'm going to punch this guy out before I get out of here.
When the case was heard in the Law Division, the judge made these comments with respect to defendant's recusal argument:
Very frankly, after reading several appeals from that Court I can understand how one could feel that the Judge was biased. However, from the transcripts it appears that the Judge's usual demeanor was mistakenly taken for bias, being bias against the defendant. This is not true. I would suggest that you don't confuse a Judge with a very sarcastic demeanor with one who is biased.
*600 I think he gave your client a fair trial, but that's the way he is.
II
Under our rules, a judge "shall be disqualified if, among other things, there is "any ... reason which might preclude a fair and unbiased hearing and judgment, or which might reasonably lead counsel or the parties to believe so. R. 1:12-1(f). In State v. Marshall, 148 N.J. 89, 279, 690 A.2d 1, cert. denied, 522 U.S. 850, 118 S.Ct. 140, 139 L.Ed.2d 88 (1997), the Court put it this way:
We ... acknowledge that it is not necessary to prove actual prejudice on the part of the court, and that the mere appearance of bias may require disqualification. R. 1:12-1(f). However, before the court may be disqualified on the ground of an appearance of bias, the belief that the proceedings were unfair must be objectively reasonable. Ibid.
In State v. Roberts, 47 N.J. 286, 220 A.2d 416 (1966), the Court was called on to review a murder conviction which was fully supported by the evidence on a record which contained "not a trace of prejudice," id. at 290, 220 A.2d 416, with one possible exception, the possibility that on one occasion, during voir dire of a juror who did not sit on the case, the trial judge uttered the word "Nigger," id. at 288, 220 A.2d 416. In a post-trial submission, defendant claimed that "he was so cut by the word that he despaired of a fair trial and lost his capacity to testify with conviction and effect." Id. at 290, 220 A.2d 416. The stenographer attested to the accuracy of the record, and the trial judge certified that he was "morally certain that [he] did not utter the offensive word contained in the quoted portion of the stenographer's transcript." Id. at 289, 220 A.2d 416. Without resolving whether the word had actually even been used, the Court reversed and remanded for a new trial for the following reason:
[W]e are in an area of great current sensitivity, and no matter how the courts deal with the issue, there may remain a doubt that the issue was handled objectively. For this reason, and although we are satisfied justice was done, we conclude, with much reluctance, that the image of justice would be better served by a new trial.
[Id. at 291, 220 A.2d 416.]
There was substantial evidence in this case that defendant understood and spoke English, even though it was not his first language. Nonetheless, the judge decided that defendant was entitled to an interpreter. The problem is that he did so in a manner that a reasonable person would take as reflecting bias. We note in particular these statements cited above: "When are we going to stop this." "These Spanish people coming in here and saying, I want an interpreter." "Somewhere this has got to stop." "You've got to give them credit. They just" "Well, I guess I better do it. I'd have the ACLU and the people marching outside with signs and so forth."
Those comments were not addressed alone to whether defendant was himself misleading the court; rather, they lumped him together with an identifiable minority against whom the judge was expressing anger, and they suggested that the judge's lack of belief in the validity of defendant's request was based, at least in part, on the supposed improper conduct of the minority group to which he belonged.
Our State Constitution provides, "No person shall be denied the enjoyment of any civil ... right, nor be discriminated against in the exercise of any civil ... right, ... because of ... race, color, ancestry or national origin." N.J. Const. art. 1, ¶ 5. Moreover, group libel, which includes defamation of a class of persons based on those constitutional categories, *601 mars civil discourse, and certainly is reprehensible in the halls of justice. Cf. State v. Gilmore, 103 N.J. 508, 524-32, 511 A.2d 1150 (1986). The circumstances of this case are analogous to those described in Roberts, supra, where there was doubt as to what the judge actually said. Here, we know precisely what the judge said, and as in Roberts, his remarks constituted an expression of bias toward a constitutionally protected minority group. We need not accept the Law Division judge's contrary finding because it is unsupported by the evidence. State v. Locurto, 157 N.J. 463, 470-71, 724 A.2d 234 (1999). A trial de novo on the record, based on acceptance of the credibility determinations of a judge who ought to have recused himself, is inconsistent with due process. Therefore, we believe that the Law Division judge erred in denying defendant's request for a plenary trial. On remand, the case should either be tried anew in the Law Division or remanded for trial before another municipal court judge.
Reversed and remanded for further proceedings consistent with this opinion.
NOTES
[1] Added after argument with the parties' consent.