987 A.2d 567

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
TERENCE MCCABE, DEFENDANT–APPELLANT.

Argued October 26, 2009—Decided January 25, 2010.

*Alan S. Albin,* argued the cause for appellant.

*Erin Smith Wisloff,* Assistant Prosecutor, argued the cause for respondent (*Robert A. Bianchi,* Morris County Prosecutor, Attorney).

Chief Justice RABNER delivered the opinion of the Court.

In this case, we revisit the issue of recusal in the context of part-time municipal court judges who are permitted to practice law subject to certain restrictions. We are asked to decide

whether a municipal court judge must recuse himself when the judge and the defense attorney are adversaries in an unrelated, pending probate case that has been dormant for two years.

██ The question raises concerns about public confidence in the integrity and impartiality of our system of justice, which we recently addressed in *DeNike v. Cupo*, 196 *N.J.* 502, 958 *A.*2d 446 (2008). Because judges must avoid not only actual conflicts but also the appearance of impropriety to promote the public's trust, we hold that part-time municipal court judges must recuse themselves whenever the judge and a lawyer for a party are adversaries in another open, unresolved case.

## I.

The facts are not in dispute. On August 22, 2008, in Morris Township, defendant Terence McCabe received citations for driving while intoxicated, *N.J.S.A.* 39:4–50, refusal to submit to a blood-alcohol test, *N.J.S.A.* 39:4–50.4a, and third-degree possession of a controlled dangerous substance, *N.J.S.A.* 2C:35–10(a)(1). The Morris County Prosecutor's Office later downgraded the possession charge to failure to turn over a controlled dangerous substance to law enforcement, *N.J.S.A.* 2C:35–10(c)—a disorderly persons offense—and referred the matter back to the municipal court in Morris Township.

Defendant hired Alan S. Albin, Esquire, to represent him. After the first municipal court appearance in the case, Albin realized that he and the municipal judge, the Honorable Robert J. Nish, J.M.C., were opposing counsel in an unrelated probate case: *In re Estate of James H. Pearson*, Docket No. MRS–P1653–2004. The case was open and unresolved in the Superior Court, Morris Vicinage, in 2008. Judge Nish, in his capacity as a private attorney, represented James Corey Pearson, a claimant against the estate who challenged the validity of the decedent's will. Albin represented the executrix of the estate, who was defending the will.

The probate case had earlier been dismissed for failure to respond to discovery requests. The complaint was reinstated on August 18, 2006, on an application by attorney Nish, after his client provided answers to interrogatories. The order entered that day was the last activity in the probate case.

On September 23, 2008, McCabe filed a motion to recuse Judge Nish. McCabe argued that recusal was necessary to avoid an actual or potential conflict of interest and an appearance of impropriety. The municipal prosecutor opposed the motion.

At oral argument on October 7, 2008, Albin stressed that although the probate matter had been inactive for two years, it was still a pending case. In response, Judge Nish asked what prejudice the dormant probate case caused McCabe. This awkward exchange followed:

MR. ALBIN: Your Honor, are you going to dismiss that case, your client—I mean, just for the record? Is that your intention? This is why the recusal motion is necessary, because you're still representing that—I mean, this is still an active case.

THE COURT: I have—I have read all of the cases in the—cited in the court rules related to—related to judges' recusals for apparent conflicts of interest. And there are none that are similar to these facts and there's no demonstrative showing of any prejudice to your client.

. . . .

THE COURT: And I don't find that there's any basis per se that there's any prejudice to Mr. McCabe because you were an adversary in a case that there's been no activity for two years.

MR. ALBIN: But it's still a live case.

THE COURT: So I will deny your application. You can—you can proceed to—I'll give you an opportunity to appeal that decision if you would like to.

McCabe sought leave before the Superior Court to appeal Judge Nish's interlocutory order. On November 21, 2008, the Superior Court denied the motion without hearing oral argument. In a statement of reasons, the court cited to *Rule* 1:12–1(f) and concluded that

the facts of the instant case do not lead this Court to believe that a fair and unbiased judgment may not result in this case. That counsel for the defendant and the judge represented adverse parties in a Probate matter without more is not the

basis for a reasonable belief that a "fair and unbiased hearing and judgment" would not occur.

Albin then filed a motion to dismiss the probate case for lack of prosecution. The unopposed motion was granted, and the case was dismissed with prejudice on December 4, 2008. In the municipal court matter, McCabe next sought leave to file an interlocutory appeal with the Appellate Division. The motion was denied on January 7, 2009. We granted McCabe's motion for leave to appeal and ordered a stay of the municipal court proceedings pending the outcome of this appeal. 198 *N.J.* 471, 968 *A.*2d 1188 (2009). We now reverse.

## II.

McCabe argues that the Superior Court applied the wrong standard of review on appeal and should have conducted a de novo review; that it misconstrued the facts by characterizing the probate case in the past tense even though it was still open; and that it applied an incorrect legal standard by ignoring *DeNike, supra,* 196 *N.J.* at 517, 958 *A.*2d 446. McCabe contends that any reasonable, fully informed person would have reason to doubt Judge Nish's partiality in light of his role in the probate case.

The State counters that the case is moot; that the Superior Court properly reviewed the matter for abuse of discretion; and that recusal is not warranted under either *Rule* 1:12–1 or *DeNike* because there is no evidence of animosity between the parties arising from their roles in the dated probate case and nothing to suggest Judge Nish would not be fair and impartial to McCabe. The State also notes that the dynamic of the municipal court must be considered; municipal court judges handle a heavy volume of cases and thus naturally encounter former adversaries at some point in their judicial service. To require recusal on the facts of the case, the State submits, would invite forum shopping and impose an undue burden on the judicial system.

### III.

New Jersey's municipal court judges have vast and important responsibilities that affect the lives of millions of residents each year. Today, according to the Administrative Office of the Courts (AOC), there are 528 municipal courts throughout the State. Most municipalities have their own municipal court; some neighboring towns combine resources and either share facilities, while preserving their individual identities, or establish a "joint municipal court" to serve multiple municipalities. *N.J.S.A.* 2B:12–1. The actual number of courts, therefore, fluctuates whenever municipalities choose to share services.

Presiding over the courts are 318 part-time and 22 full-time municipal court judges, according to the AOC. Municipal court judges within a single municipality are appointed by the mayor or governing body. *N.J.S.A.* 2B:12–4(b). The Governor appoints judges for joint municipal courts. *Ibid.*

Full-time judges must devote all of their efforts to judicial duties and may not practice law. *R.* 1:15–1(a). In contrast, part-time municipal court judges can—and often do—engage in the private practice of law, but they may not practice criminal law, cannot represent the municipality (or any of its agencies) served by the court, and cannot practice before the municipal governing body or its agencies. *R.* 1:15–1(b).

Municipal courts have jurisdiction over cases that arise within the municipality or joint area they serve. *N.J.S.A.* 2B:12–16. Their jurisdiction extends to the following noteworthy areas: violations of motor vehicle and traffic laws; violations of county or municipal ordinances; disorderly persons offenses, petty disorderly persons offenses, and other non-indictable offenses not reserved to the Superior Court; violations of fish and game laws and laws regulating boating; and other proceedings designated by statute. *N.J.S.A.* 2B:12–17. Municipal courts can also adjudicate certain fourth-degree offenses and offenses for which the maximum sentence does not exceed one year if the defendant waives indictment

and trial by jury and the county prosecutor consents. *N.J.S.A.* 2B:12–18.

Not surprisingly, millions of people come into contact with the municipal court system every year. For the 2008–09 court year, the municipal court system handled approximately 6.3 million cases.[1] New Jersey Judiciary, *Municipal Court Statistics July 2008–June 2009* 2 (2009) *available at* http://www.judiciary.state.nj. us/quant/munc0906.pdf. By comparison, about 1.1 million cases were addressed at the trial level of the Superior Court. New Jersey Judiciary, *Superior Court Caseload Reference Guide 2005–2009* 3 (2009), *available at* http://www.judiciary.state.nj.us/quant/ fiveyear.pdf.

In a State with a population of about 8.7 million, *see* U.S. Census Bureau, *State & County QuickFacts–New Jersey*, http:// quickfacts.census.gov/qfd/states/34000.html (last visited Jan. 12, 2010), those statistics are revealing: for millions of New Jerseyans each year, their only experience with the court system occurs at the municipal court level. Their impressions of the justice system are based primarily on their interactions with the municipal courts. *See In re Mattera*, 34 *N.J.* 259, 275, 168 *A.*2d 38 (1961). For those citizens, municipal court judges are the face of the Judiciary. As a result, ensuring both conflict-free, fair hearings and the appearance of impartiality in municipal court is vital to our system of justice.

## IV.

Last term in *DeNike*, this Court reviewed certain ethical precepts that are relevant to this case. As we stated, those standards

include the bedrock principle articulated in Canon 1 of the *Code of Judicial Conduct* that "[a]n independent and honorable judiciary is indispensable to justice

---

[1] Many were resolved without a court appearance, including about 1.4 million traffic tickets paid through the municipal court's website, NJMCdirect.com, according to the AOC.

in our society." To that end, judges are required to maintain, enforce, and observe "high standards of conduct so that the integrity and independence of the judiciary may be preserved." *Ibid.*

> Judges are "to act at all times in a manner that promotes public confidence," *id.* Canon 2(A), and "must avoid all impropriety *and* appearance of impropriety," *id.* commentary on Canon 2 (emphasis added). Indeed, as this Court recognized nearly a half century ago, " 'justice must satisfy the appearance of justice.' " *State v. Deutsch,* 34 *N.J.* 190, 206, 168 *A.2d* 12 (1961) (quoting *Offutt v. United States,* 348 *U.S.* 11, 14, 75 *S.Ct.* 11, 13, 99 *L.Ed.* 11, 16 (1954)). That standard requires judges to "refrain . . . from sitting in any causes where their objectivity and impartiality may fairly be brought into question." *Ibid.* In other words, judges must avoid acting in a biased way or in a manner that may be *perceived* as partial. To demand any less would invite questions about the impartiality of the justice system and thereby "threaten[ ] the integrity of our judicial process." *State v. Tucker,* 264 *N.J.Super.* 549, 554, 625 *A.2d* 34 (App.Div.1993), *certif. denied,* 135 *N.J.* 468, 640 *A.2d* 850 (1994).

[*DeNike, supra,* 196 *N.J.* at 514–15, 958 *A.2d* 446.]

Two additional rules focus directly on the subject of disqualification. Canon 3(C)(1) of the *Code of Judicial Conduct* provides that "[a] judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned." Likewise, *Rule* 1:12–1(f) instructs judges not to sit in any matter "when there is any . . . reason which might preclude a fair and unbiased hearing and judgment, or which might reasonably lead counsel or the parties to believe so." [2]

■ Our rules, therefore, are designed to address actual conflicts and bias as well as the appearance of impropriety. In evaluating McCabe's recusal motion, the municipal court judge looked for proof of prejudice to McCabe. Yet "it is not necessary to prove actual prejudice on the part of the court[;] . . . the mere appearance of bias may require disqualification. . . . [T]he belief that the proceedings were unfair must be objectively reasonable." *State v. Marshall,* 148 *N.J.* 89, 279, 690 *A.2d* 1 (citing *R.* 1:12–1(f)), *cert. denied,* 522 *U.S.* 850, 118 *S.Ct.* 140, 139 *L.Ed.*2d 88 (1997).

---

[2] Other aspects of the *Rule* are not relevant here. *See Rule* 1:12–1(a)–(e) (requiring disqualification for familial relationships, prior role as counsel in case, prior opinion in action, and interest in event or action).

In *DeNike, supra,* those principles guided us to the following standard to evaluate requests for recusal: "Would a reasonable, fully informed person have doubts about the judge's impartiality?" 196 *N.J.* at 517, 958 *A.*2d 446. That same test, of course, also applies to municipal court judges. *See, e.g., State v. McCann,* 391 *N.J.Super.* 542, 554, 919 *A.*2d 136 (App.Div.2007) (requiring recusal for appearance of impropriety when municipal court judge issued search warrant for residence of defendant he once represented); *State v. Perez,* 356 *N.J.Super.* 527, 532, 813 *A.*2d 597 (App.Div.2003) (requiring recusal when municipal court judge made comments that "reasonable person would take as reflecting bias" against minority group).

## V.

■ We now apply the above standard to the facts of this case. First, we consider the State's argument that the case is moot. The State contends that dismissal of the probate case eliminated any conflict and that this appeal should therefore be dismissed as moot. We disagree.

McCabe's defense counsel, Mr. Albin, moved to dismiss the probate case about two months after Judge Nish denied the recusal motion. That after-the-fact dismissal cannot cure an appearance problem that might have existed at the time the recusal motion was heard. In addition, the motion to dismiss highlights the dilemma presented: Judge Nish did not oppose the motion, and we accept that he had no reason to do so. But someone in his position likely *could* not oppose such a motion because to challenge it would offer proof of the need for recusal.

■ Further, the New Jersey Constitution does not restrict the exercise of judicial power to actual cases and controversies. *State v. Gartland,* 149 *N.J.* 456, 464, 694 *A.*2d 564 (1997); *see also N.J. Const.* art. VI, § 1, ¶ 1. The issue before the Court is a matter of significant public importance, which could justify deciding this appeal even if it were technically moot. *Reilly v. AAA Mid–*

*Atlantic Ins. Co. of N.J.,* 194 *N.J.* 474, 484, 946 *A.*2d 564 (2008); *Gartland, supra,* 149 *N.J.* at 464, 694 *A.*2d 564.

We turn next to the merits and begin with the standard of review. Motions for disqualification must be made directly to the judge presiding over the case. *R.* 1:12–2; *Magill v. Casel,* 238 *N.J.Super.* 57, 63, 568 *A.*2d 1221 (App.Div.1990). They are entrusted to the sound discretion of the judge and are subject to review for abuse of discretion. *Panitch v. Panitch,* 339 *N.J.Super.* 63, 66, 71, 770 *A.*2d 1237 (App.Div.2001).

We review de novo whether the proper legal standard was applied. *See Manalapan Realty, L.P. v. Twp. Comm. of Manalapan,* 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995). In this case, as discussed earlier, the municipal court judge mistakenly focused on whether McCabe had suffered any prejudice. The Superior Court addressed the language contained in *Rule* 1:12–1(f)—whether "there is any other reason which might preclude a fair and unbiased hearing and judgment, or which might reasonably lead counsel or the parties to believe so"—but did not speak to the possible appearance of impropriety discussed in *Marshall, DeNike,* and other precedent. We apply the test set forth in *DeNike, supra:* "Would a reasonable, fully informed person have doubts about the judge's impartiality?" 196 *N.J.* at 517, 958 *A.*2d 446.

To be sure, there is no evidence of bias or unfairness in the record. Nor is there proof of any animosity between the municipal judge and defense counsel. The core problem relates to the probate case: the complaint that attorney Nish moved to reinstate was still pending when the McCabe matter reached Judge Nish's courtroom. Although there had been no activity in the probate case for two years, Judge Nish and Mr. Albin were still adversaries in an open matter. It is not accurate to refer to the probate case as a *prior* matter or to their relationship as one involving *former* adversaries, as the State does. The facts are different. Under the circumstances here, allowing a judge to

oversee a case in which the defendant's attorney is also the judge's adversary in another pending matter is to invite reasonable doubts about the judge's partiality. That, in turn, raises reasonable questions in the minds of litigants and the public about the fairness of the proceedings and the overall integrity of the process. For those reasons, disqualification is required in this case.

Motions for recusal ordinarily require a case-by-case analysis of the particular facts presented. That said, it is difficult to conceive of a situation like this one in which disqualification would not be necessary. A bright-line rule in this area will offer guidance to municipal judges and litigants alike; it will also help ensure the confidence of the public in the judicial system. Accordingly, we hold that part-time municipal court judges must recuse themselves whenever the judge and a lawyer for a party are adversaries in some other open, unresolved matter.

Cases will be considered open through the 45–day period in which to file an appeal, *R.* 2:4–1, and while any appeal is pending. If the matter is reopened for good cause afterward, *R.* 1:13–7, a motion for recusal can be entertained at that time.

When recusal is necessary, the municipal court case can be transferred to another judge in the same or a nearby municipal court. *R.* 7:8–2(b). Because we focus on conflicts posed by pending matters, that approach should not impose a heavy burden on the Judiciary, as the State suggests. Whatever the burden, though, it must be met, because the cost to the Judiciary's reputation otherwise would be greater.

A more nuanced situation arises when the lawyer and the municipal court judge were former adversaries in a closed case. That fact alone does not compel recusal. In deciding whether disqualification is appropriate, judges should evaluate the factors in *Rule* 1:12–1. Other relevant considerations include any history of animosity between counsel, *see Chandok v. Chandok,* 406 *N.J.Super.* 595, 606, 968 *A.*2d 1196 (App.Div.), *certif. denied,* 200 *N.J.* 207, 976 *A.*2d 384 (2009) (requiring recusal "because the

acrimonious relationship between counsel and the judge, including the prior litigation which included charges of assault and unethical conduct, gave rise to more than a reasonable belief by an objectively reasonable litigant that the judge could not be fair and impartial"), and how recently the judge and opposing counsel were adversaries, *cf. DeNike, supra,* 196 *N.J.* at 520–21, 958 *A.*2d 446 (proposing general guidance for judges as to timing of post-retirement employment discussions). The timing of a motion for recusal may also be telling in certain instances. However, we reiterate that "it is improper for a court to recuse itself unless the factual bases for its disqualification are shown by the movant to be true or are already known by the court." *Marshall, supra,* 148 *N.J.* at 276, 690 *A.*2d 1 (citations omitted).

We add that there is no claim or evidence of bad faith or unethical conduct on the part of Judge Nish, who freely allowed for an appeal of his order. Also, nothing in the record suggests that Mr. Albin was attempting to "shop" for another judge at a late hour. It is the appearance of impropriety—and that alone—which requires recusal here, consistent with the bright-line rule we announce today.

## VI.

For the reasons set forth above, we reverse the judgment of the Superior Court and remand to the municipal court for further proceedings before a different judge.

*For reversal and remandment*—Chief Justice RABNER and Justices LONG, ALBIN, WALLACE, RIVERA–SOTO and HOENS—6.

*Opposed*—None.