# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1083-19

T.F.,

     Plaintiff-Respondent,

v.

D.F.,

     Defendant-Appellant.

_____

        Argued on May 11, 2021 – Decided June 3, 2021

        Before Judges Gilson, Moynihan, and Gummer.

        On appeal from the Superior Court of New Jersey,
        Chancery Division, Family Part, Morris County,
        Docket No. FM-14-0165-11.

        D. F., appellant, argued the cause pro se.

        T. F., respondent, argued the cause pro se.

PER CURIAM

In this appeal of a post-judgment matrimonial order, defendant D.F. (Debra)[1] argues the trial judge erred in denying her motion seeking his recusal. We disagree and affirm.

The parties were married in October 2003 and have a daughter, C.F. (Carly), born in 2008. In June 2011, Debra obtained a final restraining order (FRO) against plaintiff T.F. (Ted) based on a predicate act of harassment. The parties were divorced by way of a dual judgment of divorce entered on December 21, 2011. The judgment of divorce incorporated a settlement agreement providing Debra was the parent of primary residential custody and Ted would have parenting time. Since the divorce, the parties have had a contentious relationship and have filed numerous motions and appeals concerning Ted's parenting time.[2]

## I.

On May 7, 2019, the parties appeared before the family-division judge for a hearing. Towards the end of the hearing, the following exchange took place:

---

[1] We use fictitious names for ease of reading and to protect the identities of the parties. R. 1:38-3(d)(13).

[2] Debra also filed an appeal from an order granting Ted supervised parenting time and suppressing her defenses. We have affirmed that order in a separate opinion under docket number A-2861-19.

[Ted]:  Just one question.  I could probably ask the lawyer, but I'll ask you directly.  If she takes this to appeal, she still has to bring [Carly] next week.  Correct?  Or she would be in violation of the order.

The Court:  She does.  I have not heard that [Debra] is objecting to this interview.  But if she were to, and if she were to make a motion for a stay, I would say the stay is denied, because we need to start moving ahead.

[Debra]:  I'm all for the interview.  Your Honor.  I just wanted to say something to you as a – I think you're a dad, a father, or I'm assuming that, but there – I just want to say as a mom who is consistent and gives my all that there needs to be consistency . . . .

[Ted interrupting Debra]:  Wait a minute.  If you had been encouraging the relationship with your daughter's father – if you were a real mother you'd be encouraging that.  Don't sit here and say that you're a real mom and you look after your child.

[Debra]:  Your Honor, do you think that's okay that he's addressing me with the restraining order?

The Court [addressing Ted]:  Keep your frustrations on that side of the table, please.

Ted then apologized to the court, Debra agreed to bring Carly to the interview, and the hearing concluded without further incident.

Based on that exchange, Debra reported an alleged FRO violation to the police department.  According to Debra, the police officer who responded declined to sign a complaint because "the alleged violation occurred in front of

A-1083-19

a judge who did not feel it met the criteria for a violation," and she subsequently was advised to follow up with the prosecutor's office. Three months later, Ted was served with a summons alleging he had committed a disorderly-persons offense, N.J.S.A. 2C:29-9(b)(2), by "speaking to the victim while in court while subject to an active final restraining order . . . which prohibits contact with the victim."

On November 12, 2019, Ted moved to dismiss the summons as de minimis pursuant to N.J.S.A. 2C:2-11. On January 17, 2020, the assignment judge granted the motion, finding "to the extent [Ted] committed any offense, it was trivial."

II.

According to Debra, on or about September 28, 2019, she filed a motion seeking the recusal of the trial judge, with an initial return date of November 8, 2019.[3] The judge scheduled a conference for November 13, 2019. Pending before the court were Ted's request for parenting time and Debra's motions opposing Ted's request, for recusal, and to sequester Ted from all future court proceedings. The court adjourned the conference at Debra's request after she had advised the court there had been a death in her family.

---

[3] Debra did not include a copy of her motion papers in her appellate appendix.

Even though the judge had not yet decided or issued an order on the recusal motion, Debra submitted a notice of appeal, which we received on November 13, 2019, stating she was appealing a "[j]udgment" entered on November 8, 2019.[4] In her appellate case information statement, Debra described the "judgment" as "11-8-19 Denied Recusal." When asked to list the proposed issues to be raised on appeal, she stated "Recusal," citing N.J.A.C. 19:61-7.5(b), and asserted the judge was "a witness to the crime committed against me in his courtroom." She also checked "Yes" when asked if the judge had issued written findings or an opinion and "No" when asked if the judge had issued oral findings or an opinion.

In a November 18, 2019 letter, the clerk of the Appellate Division advised Debra her appeal was deficient because, among other reasons, she had not attached a copy of the November 8, 2019 judgment or order from which she had

---

[4] In her main brief, which was filed on April 16, 2020, Debra asserts she "was notified verbally the recusal motion was denied and [she] would receive the order, but [she] did not." She claims the judge "purposefully withheld the orders to intentionally block my [a]ppeal rights." That assertion contrasts with information provided to the Appellate Division by the trial judge in a November 27, 2019 letter, copies of which were sent to the parties. The trial judge stated he had not yet issued any orders on her pending motions and that Debra had been advised over the telephone the motions were still pending.

A-1083-19

appealed, as required by Rule 2:5-1, and the appeal would be dismissed if she did not correct the deficiencies within fifteen days.

On December 4, 2019, the judge rendered an oral opinion denying Debra's recusal motion. The judge described the basis of Debra's motion: "[s]he claims that she feels unsafe in this courtroom due to the fact that '[the judge] is a potential witness of an alleged violation of a restraining order.'" The judge found the alleged restraining-order violation was not a reason for recusal, stating he had not been advised by the prosecutor's office he was a witness, a verbatim tape of the alleged FRO violation existed, and a motion to dismiss was pending before the assignment judge. He held there was "no bias, actual prejudice, or appearance of prejudice on the part of the [c]ourt," denied the motion, and issued an order denying the recusal motion. Debra provided a copy of the December 4, 2019 order to us after the judge had issued it.

In her appeal Debra argues the judge: denied her due-process rights by finding on April 19, 2018, Carly "is being alienated from the affections of" Ted; had "minimized the effectiveness of the FRO" when he took no action after the alleged May 7, 2019 violation of the FRO; improperly scheduled case management conferences; "threaten[ed her] with incarceration if [she] did not sign for [r]eunification"; said he would consider art therapy for Carly only if

Debra "agree[d] to sign for reunification"; and had "deemed [Ted] a victim in our case and continues to defend [Ted] like [c]ounsel would."

III.

Generally, recusal motions are "entrusted to the sound discretion of the judge and are subject to review for abuse of discretion." State v. McCabe, 201 N.J. 34, 45 (2010). We review de novo whether the judge applied the proper legal standard. Ibid.

Judges must act in a way that "promotes public confidence in the independence, integrity and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety." Code of Jud. Conduct (Code) Canon 2.1; see also In re Reddin, 221 N.J. 221, 227 (2015).

To determine if an appearance of impropriety exists, we ask "[w]ould a reasonable, fully informed person have doubts about the judge's impartiality?" DeNike v. Cupo, 196 N.J. 502, 517 (2008); see also Code, cmt. 3 on Canon Rule 2.1 (2016). Judges must recuse themselves from "proceedings in which their impartiality or the appearance of their impartiality might reasonably be questioned," Code Canon 3.17(B), or if "there is any other reason which might preclude a fair and unbiased hearing and judgment, or which might reasonably lead counsel or the parties to believe so," R. 1:12-1(g).

7

Withdrawing from a case "upon a mere suggestion" of disqualification is improper. Panitch v. Panitch, 339 N.J. Super. 63, 66 (App. Div. 2001). A judge should not step aside from a case "unless the alleged cause of recusal is known by him to exist or is shown to be true in fact." Hundred E. Credit Corp. v. Eric Schuster Corp., 212 N.J. Super. 350, 358 (App. Div. 1986); see also Laird v. Tatum, 409 U.S. 824, 837 (1972) (a judge's "duty to sit where not disqualified . . . is equally as strong as the duty to not sit where disqualified"); State v. Marshall, 148 N.J. 89, 276 (1997) ("judges are not free to err on the side of caution; it is improper for a court to recuse itself unless the factual basis for its disqualification are shown by the movant to be true or are already known by the court").

To hold otherwise would create an incentive for disgruntled litigants to claim bias in order to remove a judge from a case who has ruled against them. That a judge rendered decisions in a case which did not favor the party seeking recusal – even decisions we reversed on appeal – is insufficient grounds for recusal. Marshall, 148 N.J. at 276-77; Hundred E. Credit Corp., 212 N.J. Super. at 358. A judge is not prevented from sitting by giving "[an] opinion . . . on any question in controversy in the pending action in the course of previous proceedings therein." N.J.S.A. 2A:15-49; see also R. 1:12-1.

We see no abuse of discretion or misapplication of the law in the judge's denial of the recusal motion. A reasonable, fully informed person would have no doubts about the judge's impartiality. See DeNike, 196 N.J. at 517. Debra's arguments on recusal are premised on her disagreements with the decisions rendered by the judge. She disagrees with his decision not to take action after the May 7, 2019 hearing – a decision ultimately supported by the dismissal of the disorderly-persons summons. She disagrees with his decisions regarding the alienation of Carly from Ted's affections and the reunification of Carly and Ted. She disagrees with his decisions regarding scheduling of case management conferences. The record is devoid of any indication those decisions were the product of bias, and the judge correctly found there was no "actual prejudice, or appearance of prejudice on the part of the [c]ourt." Debra's disagreements with the judge's decisions are not a sufficient basis for recusal.

We find insufficient merit in Debra's remaining arguments to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1083-19