# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3462-24

J.K.E.,[1]

    Plaintiff-Respondent,

v.

P.O.W.,

    Defendant-Appellant.

_____

        Submitted February 4, 2026 – Decided April 1, 2026

        Before Judges Paganelli and Vanek.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Ocean County, Docket No. FV-15-1992-25.

        Kevin S. Quinlan, attorney for appellant.

        Respondent has not filed a brief.

PER CURIAM

---

[1] We use initials to protect the identity of victims of domestic violence and to preserve the confidentiality of these proceedings. R. 1:38-3(d)(9)-(10).

Defendant P.O.W. appeals from a May 30, 2025 final restraining order (FRO) entered in favor of plaintiff J.K.E. pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. Based on our review of the record and prevailing law, we affirm.

I.

We recount the facts developed during the trial on plaintiff's domestic violence complaint against defendant. At the hearing, defendant was represented by counsel and plaintiff was self-represented. Each party testified in support of their respective positions.

In May 2025, defendant and plaintiff had a brief dating relationship after the two had met at church five months prior. On May 7, during their second date, the parties were at defendant's home and engaged in some sexually charged conversation and consensual physical contact, while clothed. When defendant made further sexual comments to plaintiff, she expressed she was not interested. Plaintiff testified that defendant suddenly became physically aggressive, "grabbed [her] with a lot of force . . . and pinned [her] down," and refused to release her until she said "no about four times." According to plaintiff, she then left defendant's home "before anything else happened." Afterward, defendant sent her two text messages before she blocked his phone number. The parties

2

had no further contact after this incident. On May 8, plaintiff obtained a temporary restraining order (TRO) based on the predicate act of sexual assault.

The FRO hearing began on May 22. Plaintiff testified that although there was no history of domestic violence between the parties, she was afraid of defendant because he was very sweet to her before he had "turn[ed] on a dime" and "grabbed [her] with such force and so quickly." She testified she feared for her safety because the parties attend the same church and live near each other—defendant's home was three minutes from hers and she drove a "very distinctive car," making it likely defendant would discover where she lived. According to plaintiff, she altered her route while walking her dogs and timed the walks for when she knew defendant was at work and neighbors were present because she feared defendant might see her.

After plaintiff had presented her case, defendant moved for a directed verdict, arguing plaintiff failed to prove the predicate act of sexual assault. The judge found the proofs did not substantiate sexual assault but did constitute a prima facie harassment claim. Thus, the judge sua sponte amended the TRO to include harassment.

After an eight-day adjournment to allow defendant to respond to the harassment allegation, the FRO trial continued. The judge denied defendant's

second motion, raised after plaintiff had presented her case, for a directed verdict.

Defendant testified initially that he did not remember having pinned plaintiff to the bed but later denied it happened altogether. Defendant explained that he was on the phone with an insurance agent during the second date, and he simultaneously conversed with plaintiff while he was on hold. According to defendant, both he and plaintiff exchanged sexual comments, and plaintiff said "no, no" when defendant proposed sexual contact. According to defendant's testimony, plaintiff then picked up her phone and car keys and left. Defendant explained he did not intend to harass, annoy, or hurt plaintiff with his sexual comments.

At the conclusion of trial, the judge found plaintiff's testimony more credible. The judge inferred from defendant's actions that it was his purpose to harass plaintiff because she had said "no" several times before defendant let her go. The judge found plaintiff had proven by a preponderance of the credible evidence that defendant subjected her to unwelcome, offensive touching, establishing harassment as a predicate act.

The judge also found an FRO was necessary to protect plaintiff based on her credible testimony that she feared defendant after their last encounter

4

because they both attended the same church, and the "high probability" the parties' paths would cross in the future. With the predicate act of harassment and the need for restraints established, the judge granted plaintiff's request for an FRO. This appeal followed.

II.

The narrow scope of our review of Family Part orders is well-established. Cesare v. Cesare, 154 N.J. 394, 411 (1998). Appellate review of a trial judge's decision to enter an FRO in a domestic violence matter is limited. Peterson v. Peterson, 374 N.J. Super. 116, 121 (App. Div. 2005). We are bound by the judge's "findings 'when supported by adequate, substantial, credible evidence.'" Ibid. (quoting Cesare, 154 N.J. at 412).

We give substantial deference to the Family Part's findings of fact because of its special expertise in family matters. Ibid. Deference is especially appropriate in bench trials "when the evidence is largely testimonial and involves questions of credibility." Cesare 154 N.J. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). The judge who observes the witnesses and listens to their testimony is in the best position "to make first-hand credibility judgments about the witnesses who appear on the stand[.]" N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008). As such, we do

5

"not disturb the 'factual findings and legal conclusions of the trial judge unless . . . they are so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice.'" Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

III.

Defendant asserts on appeal that plaintiff failed to prove a predicate act, the judge's credibility determinations are not supported by the record, and there was no need for the issuance of an FRO to protect plaintiff as required by Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006). We affirm the entry of the FRO against defendant because the judge's analysis is unassailable—the judge set forth factual findings under both Silver prongs and concluded plaintiff's credible testimony established the predicate act of harassment and an FRO was necessary to protect her from further abuse.

A.

When determining whether to grant an FRO pursuant to the PDVA, a judge must conduct two inquiries. Silver, 387 N.J. Super. at 125-27. "First, the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A.

6

2C:25-19(a) has occurred." Id. at 125. The predicate acts under this provision correspond to various statutory crimes and comprise the definition of "domestic violence" under the PDVA. See N.J.S.A. 2C:25-19(a). "In performing th[is] function, 'the [PDVA] . . . require[s] that acts claimed by a plaintiff to be domestic violence . . . be evaluated in light of the previous history of violence between the parties.'" Silver, 387 N.J. Super. at 125 (quoting Cesare, 154 N.J. at 402) (internal quotation marks omitted).

As relevant here, the PDVA includes "[h]arassment," N.J.S.A. 2C:25-19(a)(13), as a predicate act. Harassment occurs when "a person . . . with [the] purpose to harass another, . . . [s]ubjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so[.]" N.J.S.A. 2C:33-4(b). The "purpose to harass may be inferred from the evidence presented." State v. Hoffman, 149 N.J. 564, 577 (1997). "Common sense and experience may inform that determination." Ibid.

Here, the judge made factual findings underpinning the decision that plaintiff established the predicate act of harassment by the preponderance of the credible evidence. The judge found plaintiff's testimony as to the parties' interaction to be credible and concluded the proofs sufficiently established harassment under N.J.S.A. 2C:25-19(a)(13). We decline to disturb the judge's

7

conclusion because it was based on credibility determinations and was grounded in substantial evidence in the record.

## B.

"[T]he Legislature did not intend that the commission of one of the enumerated predicate acts of domestic violence automatically mandates the entry of a domestic violence restraining order." Id. at 126-27. The PDVA is not intended to encompass "ordinary domestic contretemps." Corrente v. Corrente, 281 N.J. Super. 243, 250 (App. Div. 1995). Rather, the PDVA "is intended to assist those who are truly the victims of domestic violence." Silver, 387 N.J. Super. at 124 (quoting Kamen v. Egan, 322 N.J. Super. 222, 229 (App. Div. 1999)). Thus, judges must exercise care "to distinguish between ordinary disputes and disagreements between family members and those acts that cross the line into domestic violence." R.G. v. R.G., 449 N.J. Super. 208, 225 (App. Div. 2017). N.J.S.A. 2C:25-29(a)(1) to (7) sets forth factors the court should consider in determining whether the second Silver prong is satisfied.

Here, the judge found an FRO was necessary to protect plaintiff from defendant based on her credible testimony that she feared for her safety because of defendant's conduct and the proximity of his home to hers. The judge's conclusion under the second Silver prong is factually supported by the record.

A-3462-24

C.

During the ruling on defendant's motion for a directed verdict, the judge stated "[u]nfortunately, I don't find a sexual assault occurred." We reject the defendant's argument that the judge, by using the word "unfortunately" in reference to plaintiff's failure to establish sexual assault, demonstrated a predisposition to rule in favor of plaintiff. To determine if an appearance of impropriety exists, we ask "[w]ould a reasonable, fully informed person have doubts about the judge's impartiality[.]" DeNike v. Cupo, 196 N.J. 502, 517 (2008); see also Code, cmt. 3 on Canon Rule 2.1 (2016). "[T]he belief that the proceedings were unfair must be objectively reasonable." State v. McCabe, 201 N.J. 34, 43 (2010) (alteration in original) (quoting State v. Marshall, 148 N.J. 89, 279 (1997)). We cannot conclude the court's use of the word "unfortunately," without more, raises doubt as to the judge's impartiality.

Any other arguments not addressed in this decision are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Hanley*

Clerk of the Appellate Division

9

A-3462-24